(No. 5366.   March 20, 1930.)

C. J. SARVIS, Respondent, v. CHILDS BOND AND
MORTGAGE COMPANY, a Corporation, Appellant.

[286 Pac. 914.]

C. S. Hunter and Frank T. Wyman, for Appellant.

P. E. Cavaney, for Respondent.

LEE, J.—C. J. Sarvis, plaintiff and respondent, plead that on or about March 1, 1924, he entered into a verbal contract of employment with defendant and appellant, Childs Bond & Mortgage Co., under the terms of which contract, ''among other things,'' the plaintiff ''was to purchase and sell bonds and securities of divers sorts, obtain fiscal agent's contracts for various bond issues, do and transact other business for and on behalf of said defendant, and incur expenses in connection therewith which defendant agreed to pay plaintiff therefor, such as railroad fare, bus fare, Pullman berth, auto hire, hotel bills, meals, telephone and telegraph, postage, insurance and such other incidental and necessary expenses in order to carry out the purposes of said plaintiff's employment; and, as part compensation for plaintiff's services, plaintiff was to receive from defendant a reasonable compensation for his time involved in connection with the specific bond issues on which plaintiff's time was employed''; that pursuant to such agreement plaintiff entered into such employment on or about said date and performed services more particularly set out in a bill of particulars attached to his complaint; that later, on or about May 12, 1924, the parties entered

into a further agreement "supplementing said original contract only in the particulars that the plaintiff should be paid five cents per mile for automobile mileage incurred by plaintiff on behalf of defendant's business, which amount was to be periodically, as at the end of the year, or upon the sale of the said automobile, adjusted to the ascertained actual total cost per mile through which said automobile was operated; that again, on or about July 12, 1924, the preceding agreements were further supplemented by an additional contract providing:

"That the said plaintiff should devote as much time as plaintiff desired to defendant's business, and that on all bond issues purchased by the said plaintiff and/or secured by defendant as a result of plaintiff's efforts and on all fiscal agent's contracts procured for defendant by plaintiff and/or obtained through plaintiff's efforts, plaintiff would receive one-half of the net profits due defendant remaining after deducting all expenses incurred in connection with said bond issue or fiscal agent's contracts, and including defendant's actual stenographic expenses incurred in relation to said bond issue, the cost of legal services in connection with said bond issue, printing of said bonds, stationery expenses, postage, insurance on bonds, telegraph or telephone expenses in connection with said bond issue, traveling expense of said defendant or plaintiff in connection with said bond issue or any other necessary or incidental expense incurred in connection with the said particular bond issue or fiscal agent's contract, but not including any of defendant's overhead expenses of defendant's office, or any charge for time of either said defendant or said plaintiff in connection with said particular bond issue. That said plaintiff was to receive for the sale of bond issues, not purchased by said plaintiff, such commission as would be decided upon by the respective parties at the time of offering said specific bond issue involved for sale. But that in case of the purchaser coming to the defendant's office to purchase said security subsequent to having been called upon by plaintiff, said plaintiff

was to receive such commission as might be mutually agreed upon by the said plaintiff, and said defendant on or about the date of such sale.

"That the said plaintiff would be reimbursed for all necessary expenses incurred when buying or selling or attempting to buy or sell securities for defendant or when the said defendant was otherwise discharging the business of said defendant. Said expense to be reimbursed promptly or credited to the said plaintiff's account upon the sale of the particular bond issue to which charged, and if not so charged to said issues, or any issues that plaintiff was to be reimbursed for such expenses by defendant.

"That for any special service not on bond issues purchased by defendant involving plaintiff's definite time expenditure plaintiff was to receive from defendant not less than $10.00 per day for each and every day so employed. That said plaintiff was to be further reimbursed for other services in connection with defendant's business out of the net yearly profits that said defendant would realize at the end of each year during the period which the plaintiff was employed for defendant, in an amount, at said time, to be mutually agreed upon by the respective parties."

That plaintiff continuously performed services under said contracts until July 26, 1926, but that defendant failed and refused to account to him in full, and was indebted in a balance sum of $2,596.92, for which sum he prayed judgment together with seven per cent per annum interest from said date. There was an attached bill of particulars setting out the services claimed under the respective agreements.

Defendant admitted plaintiff's employment under the first contract, denied that the terms of employment were such as plaintiff alleged, but admitted that plaintiff was to receive compensation for his services, and averred that he had been fully paid for all services rendered. Of defendant's version of the contractual terms, there was not the slightest mention. It denied the second agreement *in toto*, and denied the whole of the July agreement, "except

that portion relating to the sale of bonds." In that connection, defendant alleged:

"That on or about May 1st, 1924, the plaintiff was desirous of embarking into the bond business upon his own account and in consideration of the defendant permitting him to make purchases in its name, and to this extent to use its standing and credit, an arrangement was made between said plaintiff and said defendant wherein and whereby the plaintiff would make purchases of securities under the direction of the president and manager of said defendant, and in the event of the purchase of such bonds and a resale thereof in the manner and in the amount, as directed by said president and manager, one-half of the expenses, including auto expense at the rate of 5c per mile actually and necessarily traveled in connection therewith, was to be deducted, and any net profit accruing by reason of such purchase was to be equally divided between the plaintiff and the defendant, the defendant at no time assuming or agreeing to be generally liable or responsible for plaintiff's expenses or undertakings, except the instances wherein he followed the specific directions of the president and manager of the defendant herein."

All other material allegations of the complaint were denied. Three counterclaims were interposed, to wit: an alleged overpayment of $443.85, a loss of $726, due to a sale below cost of certain bonds purchased by plaintiff in alleged disobedience of his instructions, and a loss of $170.28, due to diminished profits brought about by a sale of bonds authorized by plaintiff likewise in alleged violation of defendant's instructions.

The cause was submitted to a referee, whose findings of fact and conclusions of law were adopted by the trial court. Judgment was entered in plaintiff's favor for $1,213.21, together with seven per cent per annum interest from date and costs in the sum of $267.45. Defendant has appealed.

Aside from numerous specifications of error directed to insufficiencies of evidence, defendant's prime contention is

that the court erred in not finding the specific terms and provisions of the contract and any modifications thereof, the nature and character of the services claimed to have been performed, and the reasonable value thereof. The referee found from sufficient evidence that, on or about March 1, 1924, plaintiff and defendant entered into an oral contract whereby plaintiff was to perform "certain services" for defendant in connection with its bonding business and "was to receive certain compensation therefor, together with his expenses incurred"; that this contract was, on or about May 12, 1924, supplemented by a further oral "conversation and understanding" with defendant, and that, on or about July 12, 1924, a still further "conversation and understanding" was had between the parties, supplementing their former agreements.

Uncertain and indefinite as this finding may have been, it was a positive ascertainment that plaintiff, if he performed any services at all, had performed the services for defendant at the latter's instance and request, rendering a more specific finding unnecessary, and opening the field to *quantum meruit*, save where, in a particular instance, some item may have rested in special agreement. In fact, it was upon this theory that the referee proceeded. *Vide* his report:

"Other oral conversations and understandings between the parties are scattered throughout the voluminous record in this case, relative to the disputed items and transactions between the parties, so that it is impossible for the referee to set forth in one comprehensive statement the entire contract and understanding of the parties. The referee has therefore, decided to deal with each item in dispute separately as set forth in plaintiff's bill of particulars and in defendant's counterclaims, and decide how each item in dispute between the parties is affected by the conversations, undertakings and agreements between Mr. Sarvis and Mr. Childs, relative thereto."

This was all that the referee could do, considering the pleadings and evidence adduced. 13 C. J. 750, par. 910,

note 72, citing among other cases that of *Sturtevant v. Fiss etc. Horse Co.*, 173 App. Div. 113, 159 N. Y. Supp. 399, saying:

"The law is well settled that when an action is brought upon a special contract of employment a recovery may be had upon *quantum meruit* when the special promise is not established, but the evidence does, in fact, show the rendition of services under circumstances which imply an agreement to pay therefor."

It but remains, therefore, to determine whether or not the referee's findings as to services rendered and their reasonable value are supported by the evidence. Items 6, 20, 22, 23, 24, 25, 27, 28, 34, 36, 37, 39 and 42 are attacked for insufficiency of the evidence. Item No. 6 is an allowed charge of $168.10 for additional mileage on plaintiff's Ford and Buick cars. That defendant approved and agreed to pay this charge was positively sworn to by plaintiff. Furthermore, in Plaintiff's Exhibit 5, defendant's letter addressed to plaintiff on August 18, 1926, there appears a column of recited credits under the statement "According to our ledger you are credited with." The last credit in the column announces: "Add. mileage cost on Ford and Buick, as per Gen. Ledger—$168.10." The correctness of this item is further attested by Plaintiff's Exhibit 8, a letter from defendant to plaintiff of date Sept. 20, 1926, setting forth a statement of plaintiff's account, and showing a determined balance against plaintiff, after allowing him all credits, including this specific item of $168.10. In none of these letters was there any dispute or offer of compromise involving this particular item: it must be taken as established.

Item 20 is an allowance of $111.37, one-half of the net proceeds of a participation deal. The evidence abundantly supports such deal, but inasmuch as it appeared that the transaction was not closed until after the commencement of the action, defendant complains that there was no amendment made to conform to the proof, and, therefore, no issue raised. There having been no objection to the

introduction of the particular evidence, the original complaint was deemed amended. (*Newman v. Oregon Short Line R. R. Co.*, 34 Ida. 417, 419, 201 Pac. 710.)

As to items 22 and 23, the referee found upon sufficient evidence "that plaintiff performed the services as claimed under these two items," and "that there was an understanding between the parties that plaintiff was to be paid for such services." While there was no evidence of any agreement to pay a sum certain, the referee found that in plaintiff's said exhibit 8 defendant had credited plaintiff with $250 for these very services. He rightly took such entry as presumptive evidence of what the service was reasonably worth. Practically the same facts obtain with respect to item 24. Plaintiff had claimed $200 as salary for a twenty-day trip. Mr. Childs had testified that he was willing to pay plaintiff at the rate of $125 per month on a *per diem* basis. Upon this basis, the referee allowed him $96.50, a rate of which defendant cannot complain. Item 25 was disposed of in the same way.

With reference to items 27 and 28, the referee found that the expenses were incurred, and allowed the respective sums of $4 and $16. The record shows that each item was considered in estimating the net profits of Nampa bonds, and was duly recognized and noted in plaintiff's said exhibit 8. We think items 34, 36, 37, 39 and 42 are sustained by the evidence.

Coming now to the second and third counterclaims, the referee found that the first loss claimed was to have been divided between the parties. Plaintiff's testimony, both direct and rebuttal, supported this view. That it was a participation deal has further confirmation in plaintiff's said exhibit 5, Childs' letter to plaintiff, August 18, 1926, stating:

"I believe the sum of $500 would be a fair margin until the matter is settled, which would make you chargeable with one-half thereof."

The third counterclaim presents this situation. The referee found that this was a participation item, and the

record sustains him. He accordingly awarded plaintiff one-half of the resulting net profits. It appears, however, that the plaintiff authorized the sale of the bonds at a less figure than the defendant had determined and agreed upon. Rather than sell for a lesser figure, Childs stated in plaintiff's hearing that he would take over the issue himself at the price first agreed upon. The sale resulted in a profit, but defendant contends that by reason of the figure accepted there was suffered a loss of $170.28, all of which should be charged to plaintiff.

Since it was a participation item, plaintiff could have been held responsible to defendant for only one-half of the lost profits. But the record wholly fails to disclose any competent evidence that the bonds could have been sold for any greater sum than was actually received. Any anticipated, better sale was purely speculative.

Judgment affirmed. Costs to respondent.

Givens, C. J., and Budge, Varian and McNaughton, JJ., concur.

### ON PETITION FOR REHEARING.

#### (April 19, 1930.)

LEE, J.—Appellant petitions for a rehearing, and charges that the court's opinion "gives the trial Judges and the bar of the state definitely to understand that in a suit upon a contract in which the complaint contains no allegations as to reasonable value of the services sued for, the plaintiff can recover upon a *quantum meruit.*"

Governed solely by the facts in the instant case and all others of similar content, the above is just exactly what we meant to say, that far and no further. We have in nowise sought to reverse or modify the general rules of pleading or practice incident to actions in contract and *quantum meruit.* Such a defective complaint as petitioner cites is open to demurrer, and the evidence sought to be

adduced thereunder subject to all objections for variance, surprise, prejudice and what not.

But, when the adverse party has failed to exercise such rights, and permitted a mass of evidence to confront the court, showing services performed under an indefinite contract, the agreed value of which was never established, but which services the evidence shows were worth a reasonable sum, the trial court is not to be stultified into denying a plaintiff his patently earned remuneration. The problem is restricted entirely to the platter of facts dished up to the court. The rule announced does no violence to established rules of pleading and practice, but rests in reason and common sense, its purpose being "to obviate another action on the same facts and evidence." (*Donovan v. Harriman*, 139 App. Div. 586, 124 N. Y. Supp. 194.)

Petition for rehearing denied.

Givens, C. J., and Budge, Varian and McNaughton, JJ., concur.