538 P.2d 1185

**McKAY CONSTRUCTION CO., a partnership, Plaintiff-Appellant,**

v.

**The ADA COUNTY BOARD OF COUNTY COMMISSIONERS et al., Defendants-Respondents.**

**No. 11432.**

Supreme Court of Idaho.

Feb. 7, 1975.

On Rehearing Aug. 6, 1975.

---

11. Comment, Finance Lessor's Liability for Personal Injuries, Univ. of Ill. Law Forum, Vol. 1, 154, 158 (1974).

Vernon K. Smith, Boise, for plaintiff-appellant.

James E. Risch, Pros. Atty., Ada County, Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from the judgment rendered against plaintiff-appellant McKay Construction Company in an action on a sanitary land fill contract entered into with defendant-respondent Ada County Board of County Commissioners. We reverse and remand.

McKay entered into a contract on March 1, 1972 with Ada County which provided that McKay was to operate two sanitary land fill sites for the handling and disposition of waste. Paragraph 13 of that contract provides "if the quantity of waste to be disposed of under this agreement exceeds an annual average of 360 tons per operating day at the Hidden Hollow Site or 50 tons per operating day at the Kuna Site, then the contract amount will be renegotiated." It is clear that paragraph 13 was deemed necessary by both parties because of the novelty of the undertaking, the inexperience of both parties and the difficulty of determining the quantity of waste which would be deposited during an average operating day.

After operating for some time McKay claimed that the waste deposited at the Hidden Hollow site exceeded 360 tons per day thus requiring renegotiation under said paragraph 13. The parties did negotiate but were unable to reach an agreement. McKay then brought the instant action seeking monetary damages and equitable relief.

It appears that the trial court and the attorneys for the parties agreed to a bifurcated trial. The issue of liability would be

first tried and thereafter the issue of damages. The trial judge stated:

"* * * the record may show through an informal pretrial conference at the commencement of the trial the damage issue was reserved * * *"

At the conclusion of the trial the court found that the waste deposited at the Hidden Hollow site did exceed 360 tons per operating day but also found that McKay had not met its burden of proving the extent of the excess beyond 360 tons per day. The trial court also held paragraph 13 of the contract was legally unenforceable because it was too vague. Judgment was rendered for the defendant and the court also held that McKay was relieved of and could terminate any additional performance of the contract.

Appellant McKay challenges the holding of the trial court that the county was not liable for the increase in the quantity of the waste and also asserts error in several evidentiary rulings of the court. Appellant argues first that paragraph 13 of the contract is enforceable and further that regardless of the enforceability of that paragraph it is entitled to increased compensation under the theory of implied contract. Assuming, but not deciding, that the trial court ruled correctly on the enforceability of paragraph 13, nevertheless it was placed in the contract, presumably in good faith, for a reason and if nothing else indicates that the contract price negotiated between the parties was meant to include the processing of waste in a quantity of only 360 tons per operating day. McKay was not bound to process a larger quantity. Such conclusion was recognized by the trial court when it held that McKay was relieved from further performance of the contract. The unchallenged finding of the trial court is conclusive that McKay has been processing waste in excess of 360 tons per operating day at the Hidden Hollow site.

 Thus McKay has been rendering service for the county beyond that required by the contract and the county has continued to accept that service. It is unchallenged that the Board of Commissioners had the power to make the express contract. I.C. §§ 31–4402, 4403. If the county had the power to make the express contract then in the proper circumstances it can be held liable on the theory of an implied contract. H. J. McNeel, Inc. v. Canyon County, 76 Idaho 74, 277 P.2d 554 (1954). *See also* Sarvis v. Childs Bond Co., 49 Idaho 79, 286 P. 914 (1930), and Cook v. Saltzer, 74 Idaho 97, 257 P.2d 228 (1953). The rationale for the rule is that one party may not unjustly enrich itself at the expense of another.

 The fact that the services were rendered as in the case at bar under a provision of the express contract that is found to be unenforceable does not bar recovery on the theory of implied contract. In H. J. McNeel, Inc. v. Canyon County, *supra,* McNeel had contracted with Canyon County to construct a county jail for a fixed price. After much of the work had been performed a lawsuit challenging the legality of the contract occasioned a delay and an increase in the cost of the construction. McNeel demanded increased compensation which was refused and the suit resulted. The court held that under the facts McNeel was entitled to restitution and quoted with approval from 84 A.L.R. 936 at 973:

"It is a general rule that, even though there was no express contract nor any formal contract, a municipality, or other governmental body, is liable upon an implied contract for any property or benefits received or appropriated by it under such circumstances as to lead to the inference that payment was intended by the parties, or such that, in justice and equity, compensation should be made for benefits voluntarily accepted, provided such property or benefits would be the proper subject of an express contract, and within the contractual powers of such municipal corporation."

*See also* 66 Am.Jur.2d, Restitution and Implied Contracts § 7. We deem *McNeel* applicable to the facts of the case at bar. We point out that in the case at bar the parties obviously attempted to make provision for increased costs and that the possibility of increased costs was anticipated.

Appellant argues it is entitled to compensation for processing waste in excess of 250–270 tons per day which appellant claims was the amount represented by the respondent as likely to occur. The contract is clear that the parties contracted for the processing of 360 tons per day and therefore the correct measure of compensation is that amount in excess of 360 tons per operating day.

The trial court found that McKay did not carry its burden of showing the amount of waste in excess of 360 tons per operating day was deposited at the site. Although the trial was to be bifurcated, nevertheless McKay attempted to offer evidence to show how much waste was deposited at the site. Appellant's theory is that this was necessary to the question of liability since if McKay did not show the quantity to exceed 360 tons per operating day, there would have been no liability on the part of the respondent outside the limits of the express contract. Insofar as the question of liability is concerned such was resolved by the unchallenged finding of the trial court that there had been in excess of 360 tons per day deposited at the site.

■ At trial, appellant called a professional engineer to testify as an expert witness. He stated that he had an opinion as to the amount of waste deposited at the site but also stated that he relied in part for his opinion on a solid waste disposal report by the Omaha-Council Bluffs Metropolitan Area Planning Agency. Upon objection the court refused to allow either the report into evidence or the witness to state his opinion on the amount of

waste deposited at the site. Offers of proof were thereafter made.

At another stage in the trial appellant offered into evidence, through a different expert witness, a report prepared by the United States Environmental Protection Agency. Objection to this too was sustained on the grounds the report was hearsay.

We hold those rulings of the trial court to be erroneous. Although the treatises were clearly hearsay, nevertheless they should have been admitted under an exception to the hearsay rule for learned treatises. I.C. § 9–402 provides:

"Historical Works—Books of science or art—Published maps or charts—Effect as evidence.—Historical works, books of science or art, and published maps or charts, when made by persons indifferent between the parties, are prima facie evidence of facts of general notoriety and interest."

*See also* Bell, Handbook of Evidence for the Idaho Lawyer 158 (2d ed. 1972).

While the statute may not appear to be of direct application herein, it has already been given broad interpretation in Idaho. In Julien v. Barker, 75 Idaho 413, 272 P.2d 718 (1954) the court admitted in evidence a manufacturer's instructions for the use of a drug and proceeded to treat it as prima facie evidence. *See also* Application of Boyer, 73 Idaho 152, 248 P.2d 540 (1952) wherein the court took judicial notice of a treatise by scientists of the United States Department of Interior.

The major justifications for creating or enlarging an exception to the hearsay rule have been said to be necessity and reliability. Washington County v. First National Bank, 35 Idaho 438, 206 P. 1054 (1922); Bell, Handbook of Evidence, *supra*, at 130. In the case at bar necessity is satisfied since it would be difficult if indeed not impossible to require the persons involved in the above studies to testify in Idaho and the reliability test is also satisfied since the treatises were the results of studies by persons indifferent as between

the parties here. As stated by the newly adopted Federal Rules of Evidence, Rule 803, there is excepted from the hearsay rule:

"(18) Learned treatises,—To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamplets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits."

We note that in the case at bar trial was held to the court sitting without a jury. We do not rule on the question of whether the documents admitted under this rule are to be admitted for all purposes, should merely be read into the record, or taken into a jury room in such a case. We also note that herein the documents were sought to be utilized in the examination of experts as foundation for their expert opinion testimony. Hence we do not decide whether such documents may be admitted under other circumstances.

Appellants other assignments of error concern evidentiary rulings within the discretion of the trial judge and were not erroneous.

We summarize as follows: McKay and the County agreed for the processing of 360 tons of waste per day. No agreement was then or later reached for compensation for waste exceeding that amount. The waste did exceed 360 tons per day. The performance was and still is being rendered by McKay and accepted by the County.

Clearly McKay was not a volunteer and equity will not permit an unjust enrichment of the County at the expense of McKay. Although the trial court indicated the trial was limited to the question of liability with the question of damages reserved nevertheless in effect the trial court ruled against McKay on the basis it had not proved its damage.

The judgment is reversed and the matter remanded for further proceedings consistent herewith. Either party should be allowed to terminate the contract at will. Costs to Appellant.

McQUADE, C. J., DONALDSON, J., and SCOGGIN (Retired) and MAYNARD, District Judges, concur.

## ON REHEARING

SHEPARD, Justice.

Respondents' petition for rehearing was granted and the case was reargued. The Court continues to adhere to its previous opinion.

McQUADE, C. J., and SCOGGIN, District Judge (Retired), concur.

DONALDSON, Justice (concurring in part and dissenting in part).

I dissent from that portion of the original opinion that assumes there was an implied contract between McKay Construction and the County. The theory of implied contract was not raised in the district court nor tried in the district court and I feel that the case should be remanded to the district court for trial on this issue.

MAYNARD, District Judge concurs with DONALDSON, J.