## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 44382

STATE OF IDAHO,

Plaintiff-Respondent,

v.

JASON SCOTT DOWNING,

Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Boise, November 2017 Term

2017 Opinion No. 134

Filed: December 22, 2017

Karel A. Lehrman, Clerk

_____

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

The district court's judgment of conviction is <u>vacated</u>.

Barnum Howell & Gunn, PLLC, Boise, for appellant. Randall S. Barnum argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Kale D. Gans argued.

_____

BRODY, Justice

This is a Fourth Amendment suppression case stemming from a search of a probationer's residence while additional visitors were present. The probation officers temporarily detained the visitors while conducting an initial search of the home to secure the remaining occupant. During this initial search, the searching officer observed drug paraphernalia in the garage, and the probation officers further detained the visitors until an investigative officer arrived. The investigative officer performed a pat-search on Downing, one of the visitors, which led to the discovery of drugs on his person. The officer further questioned him, which led to admissions of drug use that day. Downing sought to suppress all evidence obtained against him that day as derived from both an unlawful seizure and search. The district court denied his motion to suppress the drugs and admissions to the investigative officer. The district court's decision was erroneous. We vacate the judgment of conviction.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the night of October 6, 2015, Ada County Probation and Parole Officers Hurst and Severson conducted a residence verification on probationer James Cook. Cook had waived his Fourth Amendment right to contest a search of his person or premises as a condition of his probation. Appellant Jason Downing was at Cook's house at the time of this verification. The probation officers knocked on the door when they arrived, and Downing answered the door and allowed the officers into the house.

The probation officers saw Cook apparently hiding behind the couch in the entry room, and asked both Downing and Cook to sit on the couch with their hands visible. Either Downing or Cook informed the parole officers that a third person was also in the house. Officer Hurst remained in the front room while Officer Severson secured the house. This initial search took less than five minutes. During this search, Cook's behavior spiraled downward and became erratic. Downing stood up from the couch and started walking in the direction of the door. Officer Hurst asked him to sit back down with his hands visible. Officer Severson's search turned up the third individual in the house, as well as visible drug paraphernalia in the garage. The officers then called for assistance from the Boise Police Department, which the dispatch log showed was entered at 7:49 p.m. Before backup arrived, and without providing a *Miranda* warning, one of the probation officers asked Downing whether he had been smoking methamphetamine in the garage, and Downing answered that he had.

Boise Police Officer Holtry arrived on the scene at 8:06 p.m, seventeen minutes after the dispatch log recorded the probation officers' call for backup. Officer Holtry arrived to find Cook handcuffed, and the two other occupants sitting on the couch. Officer Hurst provided Officer Holtry a brief update regarding the events leading up to that point. At the suppression hearing, Officer Holtry testified about his recollection of the scene upon arriving:

> Well, my main concern is being by myself. I didn't know who was who, who was where, who was doing what. The fact that I was advised that when they initially knocked on the door, the one offender had tried to conceal himself behind a couch. He was trying to hide. I didn't know who anybody was on the scene or what their involvement was, so just initially is to just sort of secure things and assign safety assessment, and make sure everybody's contained in one area and nobody has any weapons or anything like that on them.

Officer Holtry testified that he asked the probation officers if anyone had been pat-searched prior to his arrival, and they told him no. He then read Downing his *Miranda* rights, and

2

subsequently performed a pat-search on him. During Officer Holtry's pat-search of Downing, he did not find any weapons. However, he did feel an object in his pocket. Officer Holtry asked Downing what the object was, and Downing replied that it was methamphetamine. Officer Holtry removed the object—a small nylon bag containing methamphetamine—from his pocket. Shortly thereafter, Officer Holtry questioned Downing about the methamphetamine found in his pocket and his actions that day. Downing told him they had smoked methamphetamine, and that he had placed the bag in his pocket when he went to open the door. He then placed Downing under arrest for frequenting and possession.

Downing filed a motion to suppress "any and all evidence seized from the defendant, and statements made by him" that evening. After a hearing in which Downing, Officer Hurst, and Officer Holtry testified, the district court granted the motion to suppress the pre-*Miranda* statements Downing made to the probation officers, but denied it as to the drug evidence and statements Downing made to Officer Holtry. Downing timely appealed.

## II. STANDARD OF REVIEW

When reviewing a trial court's order granting or denying a defendant's motion to suppress, this Court defers to the trial court's findings of fact unless they are clearly erroneous. *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009). Factual findings supported by substantial and competent evidence are not clearly erroneous. *State v. Henage*, 143 Idaho 655, 659, 152 P.3d 16, 20 (2007). "Decisions regarding the credibility of witnesses, weight to be given to conflicting evidence, and factual inferences to be drawn are also within the discretion of the trial court." *Bishop*, 146 Idaho at 804, 203 P.3d at 1209 (citing *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995)). This Court maintains free review, however, over whether the facts surrounding the search and seizure satisfy constitutional requirements. *Henage*, 143 Idaho at 658, 152 P.3d at 19.

## III. ANALYSIS

Downing first contends that the district court erred in relying on *Michigan v. Summers*, 452 U.S. 692, 697 (1981), in determining that the probation officers executing an authorized warrantless search could detain for investigation people "found on the premises who were not readily ascertainable residents or occupants." Downing asserts that the difference between a probation search and a search based on a warrant is determinative, and the district court's reliance on *Summers* to allow law enforcement to detain third parties during a probation search

3

was error. The State responds that the factors the *Summers* Court addressed are present in both warrantless probation searches and those predicated on a warrant. It contends that the district court rightly noted these factors applied equally in this case as they would to a warrant-based search.

For the reasons that follow, we need not decide the constitutional interplay between probation officers and third parties who are present at or around the scene while the officers perform their duties. The drug evidence and admissions still should have been suppressed.

**A. The district court erred in concluding that Officer Holtry's pat-search of Downing was reasonable under the totality of the circumstances.**

Downing claims that even if his detention was legal, Officer Holtry could not lawfully conduct a pat-search. He contends that, absent his suppressed admission to the probation officers regarding his drug use, Officer Holtry "possessed no reasonable suspicion that Mr. Downing had engaged in criminal activity" since the drug paraphernalia was found in the garage. Additionally, he claims that Officer Holtry lacked an objective reason to think Downing posed a risk during the interaction since he was "supremely cooperative" with the probation officers until Officer Holtry's arrival. The State counters that the totality of the circumstances confronting Officer Holtry when he arrived on scene justified his pat-search in the interest of officer safety.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches. U.S. Const. amend. IV. A warrantless search is unreasonable unless an exception to the warrant requirement exists. *Henage*, 143 Idaho at 660, 152 P.3d at 21 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "One such exception allows an officer to conduct a limited self-protective pat down search of a detainee in order to remove any weapons." *Id.* (citing *State v. Wright*, 134 Idaho 79, 82, 996 P.2d 298, 301 (2000)). A pat-search allows a law enforcement officer to investigate "without fear of violence being inflicted upon the officer's person." *State v. Rawlings*, 121 Idaho 930, 933, 829 P.2d 520, 523 (1992). An officer may reasonably justify this type of search if the objective "facts available to the officer at the moment of the [] search [would] warrant a man of reasonable caution in the belief that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *Wright*, 134 Idaho at 82, 996 P.2d at 301. Several factors can determine whether a reasonable law enforcement officer could conclude someone might be armed and dangerous, including bulges in clothing resembling a weapon, whether the encounter took place at night, furtive movements, appearing nervous or agitated, appearing to be under the influence of drugs, or an unwillingness to cooperate. *Bishop*, 146 Idaho

4

at 819, 203 P.3d at 1218. "Whether any of these considerations, taken together or by themselves, are enough to justify a *Terry* frisk depends on an analysis of the totality of the circumstances." *Id.* (citing *Henage*, 143 Idaho at 661–62).

This is a close case. Many of the *Bishop* factors were missing in this encounter, but some were present. There was no weapon-shaped bulge or furtive movements, and Downing appeared willing to cooperate throughout. However, the encounter took place after Officer Holtry was called to a house and briefed by on-scene officers that at least one of the unsecured people he was about to question had admitted recently smoking methamphetamine. Additionally, the confusion of the situation—even if Downing was not the one acting erratically—likely adds to a reasonable officer's perceived need to be cautious. Officer Holtry was not present for the preceding seventeen minutes of Downing's admittedly docile behavior, so he had only a brief snapshot of Downing's calm demeanor before starting to investigate.

However, given the totality of the circumstances in this case, this Court finds that the pat-search was unreasonable. At the time he was searched, probationer (who had been the only one acting erratically) was handcuffed. Officer Holtry testified that he "didn't know who was who, who was where, who was doing what." He further testified that he wanted to "secure things" since Downing and the other visitor were going to "maintain a position of being unsecured." *Terry* and its progeny require more than general unease or confusion, however, else law enforcement could conduct frisks in nearly every encounter with the public. Absent a warrant, a frisk for weapons "is only justified when, at the moment of the frisk, the officer has reason to believe that the individual he or she is investigating is 'armed and presently dangerous to the officer or to others' and nothing in the initial stages of the encounter dispels the officer's belief." *Bishop*, 146 Idaho at 818, 203 P.3d at 1217.

This Court thus determines that the factors on which Officer Holtry relied to perform a pat-search fell short of the required reasonable articulable suspicion particularized to Downing.

## B. Downing's post-*Miranda* admissions to Officer Holtry were not sufficiently attenuated from the unlawful search.

It is well-established that the exclusionary rule provides that "evidence obtained as a result of an unlawful search may not be used against the victim of the search." *State v. Page*, 140 Idaho 841, 846, 103 P.3d 454, 459 (2004) (citing *Wong Sun v. United States*, 371 U.S. 471, 485 (1963)). An exception to this rule exists where intervening events break the causal chain such that the derivative evidence is sufficiently attenuated from an officer's unlawful conduct. *State v.*

5

*Barnett*, 133 Idaho 231, 235, 985 P.2d 111, 115 (1999) (citations omitted). A court must consider three factors in an attenuation analysis: "(1) the elapsed time between the misconduct and the acquisition of the evidence, (2) the occurrence of intervening circumstances, and (3) the flagrancy and purpose of the improper law enforcement action." *Page*, 140 Idaho at 846, 103 P.3d at 459 (citing *United States v. Green*, 111 F.3d 515, 521 (7th Cir. 1997)).

We need not conduct a protracted analysis of the attenuation doctrine in this case since Downing's admissions flowed directly from the illegal search, with no intervening factors to consider. The testimony at the suppression hearing established that, after the pat-search, two things happened immediately. First, Downing granted Officer Holtry permission to retrieve the object from his pocket—which turned out to be methamphetamine. Then, after taking possession on the drugs, Officer Holtry began to question Downing as to the drugs he just seized and Downing's actions that day, which further led to admission of drug use at the house. These results are not attenuated from the illegal search; they are its direct outgrowth. Accordingly, Downing's admissions once confronted with the drugs in his pocket should have been suppressed.

**C. The inevitable discovery doctrine does not save the drug evidence from exclusion.**

The State contends that even if this Court finds the pat-search and subsequent seizure of drugs from Downing's pocket illegal, exclusion is improper under the inevitable discovery doctrine. Downing states that the inevitable discovery rule only saves the fruits of an unlawful search if some other lawful action took place that would have led to the evidence.

The United States Supreme Court set out the inevitable discovery doctrine in *Nix v. Williams*, 467 U.S. 431, 444 (1984), stating:

> If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense.

The inevitable discovery doctrine is similar to the independent source doctrine. *Id.* The independent source doctrine is where a lawful approach *actually taken* leads to the discovery of evidence that was also derived from unlawful means. *Id.* at 443. Though related, the inevitable discovery doctrine asks courts to engage in a hypothetical finding into the lawful actions law enforcement *would have inevitably taken* in the absence of the unlawful avenue that led to the evidence. *Id.* at 459 (Brennan, J., dissenting); *Stuart v. State*, 136 Idaho 490, 497, 36 P.3d 1278,

6

1285 (2001). The premise is that law enforcement should be "in the same, not a worse, position that they would have been" absent the misconduct. *Id.* at 443.

The statute that the State claims would have permitted Downing's inevitable arrest is Idaho Code section 37-2732(d). The relevant (liability) portion of that statute reads as follows:

> It shall be unlawful for any person to be present at or on premises of any place where he knows illegal controlled substances are being manufactured or cultivated, or are being held for distribution, transportation, delivery, administration, use, or to be given away.

Under *Nix* and *Stuart*, the State must thus establish by a preponderance of the evidence that Officer Holtry had probable cause to arrest Downing for violating this statute, without any drug evidence or suppressed admissions.

The State claims in its briefing, "Regardless of the propriety of the frisk and the search, Downing was present in a house in which drugs were found, and admitted to Officer Holtry that he had used drugs in the house that day." This, it claims, provided Officer Holtry with probable cause to arrest Downing for frequenting a place where drugs were being used. However, the admissions flowing directly from the illegal pat-search and subsequent removal of methamphetamine from his pocket should have been suppressed, and cannot be used in determining whether probable cause existed. Nor can the admissions from any pre-*Miranda* statements elicited by the probation officers in this case.

The State is left with only the first of its two pillars on which it claims Downing would have been arrested, that he "was present in a house in which drugs were found." But this is not a violation of the statute. The statute requires that a person be present at a place "where he *knows* illegal controlled substances are being" used. I.C. § 37-2732(d). We addressed a similar situation surrounding a "frequenting" arrest in *State v. Crabb*, 107 Idaho 298, 688 P.2d 1203 (1984). The relevant facts in *Crabb* are as follows:

> The officers in the present case arrested Crabb the moment he appeared at the door of the mobile home. They did not then have reason to suspect that Crabb *knew* that illegal controlled substances were being held at that place. Thus, Crabb was arrested for his mere presence at a place suspected of containing controlled substances. While the officers may have had the right to detain Crabb for investigation during the ensuing search of the premises pursuant to a valid warrant, they had no right to arrest him or search his person *at that time*. Therefore, the search of Crabb's person cannot be upheld as a search incident to the first arrest.

7

*Id.* at 303, 688 P.2d at 1208. The officers eventually saw marijuana in plain view and were able to arrest him for possession, but in that case the testimony established that "the officers knew it was Crabb's mobile home" at which they saw the drugs. *Id.* at 304, 688 P.2d at 1209. This is not the case with Downing.

This Court determines that the presence of drug paraphernalia in the garage was not enough for Officer Holtry to arrest Downing for frequenting under the statute. After suppressing both the drugs and the admissions, all that remains is a person who had been nothing but cooperative for over twenty minutes in someone else's residence that had drug paraphernalia in the garage. The inevitable discovery exception does not permit us to speculate on the course of action the investigation *could* have taken in the absence of pre-*Miranda* statements, an unlawful pat-search, and subsequently tainted admissions—even if that alternate course likely would have yielded the evidence. The doctrine must presuppose inevitable hypotheticals running in parallel to the illegal actions, not in series flowing directly from the officers' unlawful conduct. As our Court of Appeals has stated, "The [inevitable discovery] doctrine 'is not intended to swallow the exclusionary rule whole by substituting what the police should have done for what they really did.'" *State v. Holman*, 109 Idaho 382, 392, 707 P.2d 493, 503 (Ct. App. 1985) (citing *State v. Cook*, 106 Idaho 209, 226, 677 P.2d 522, 539 (Ct. App. 1984)).

The State failed to demonstrate that legitimate means would have inevitably led to Downing's arrest for violation of Idaho Code section 37-2732(d), and thus the exception does not apply in this case.

## IV. CONCLUSION

For the foregoing reasons, this Court reverses the district court's decision to deny Downing's motion to suppress the methamphetamine found on Downing's person and his statements to Officer Holtry. Without this evidence, the conviction cannot be sustained. Accordingly, the judgment of conviction is vacated.

Chief Justice BURDICK, and Justices JONES, HORTON and BEVAN CONCUR.