**STATE of Tennessee, Appellant,**

v.

**Bobby CRUTCHER, Appellee.**

Supreme Court of Tennessee,
at Nashville.

April 12, 1999.

John Knox Walkup, Attorney General and Reporter, Michael E. Moore, Solicitor General, Karen M. Yacuzzo, Assistant Attorney General, for Appellant.

Bryce C. Ruth, Jr., White House, Tennessee, for Appellee.

## OPINION

BARKER, J.

This is an appeal by the State of Tennessee from the judgment of the intermediate appellate court affirming the suppression of evidence in the trial court below.[1] The sole issue is whether the warrantless police search of the appellee's motorcycle violated his rights guaranteed by the Fourth Amendment of the United States Constitution and Article I, section 7 of the Tennessee Constitution.

The State contends that the suppression of evidence was improper because the search in question was incident to a lawful arrest. For the reasons that follow, we conclude that the

1. Oral argument was heard in this case on October 15, 1998 in Clarksville, Tennessee, as part of this Court's S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

appellee, Bobby Crutcher, was not under arrest at the time of the police search. Accordingly, we affirm both the trial court and the Court of Criminal Appeal's determination that the search was not incident to a lawful arrest. The evidence obtained from the search was properly suppressed.

## BACKGROUND

On October 19, 1995, Officer Frank Moniz of the Gallatin Police Department observed three motorcyclists drive away from a traffic light at an excessive rate of speed. The officer activated his emergency flashing equipment and pulled over two of the speeding motorcyclists. However, the third motorcycle, driven by the appellee, accelerated even more in an attempt to flee from the pursuing officer. Officer Moniz gave chase to the appellee and the two vehicles reached speeds of one hundred (100) miles per hour. The officer radioed for assistance and eventually slowed his vehicle down upon entering a residential area.

As Officer Moniz crested a hill in his patrol car, he observed the appellee drive up an embankment and wreck into a storm drain. The appellee had been thrown approximately twenty feet away from his motorcycle and was crawling out of the roadside brush when the officer drove up to apprehend him. Officer Moniz testified that upon reaching the appellee, he placed one arm behind the appellee's back and intended to arrest him for reckless endangerment and evading arrest.[2] However, when the appellee complained of injuries, Officer Moniz ceased handcuffing him and called for an ambulance.

Officer Moniz testified that he made no additional effort to arrest the appellee at the accident scene. While waiting for the ambulance, Officer Moniz and other police officers stayed with the appellee and made him lay still for his safety. The appellee questioned Officer Rich Evans about what was going to happen to him. Officer Evans told the appellee that he would be taken to a nearby hospital for medical treatment. The officers did not discuss criminal charges or arrest proceedings with the appellee and they did not give him a *Miranda* warning at the scene.

Officer Moniz testified that an ambulance arrived only minutes after he radioed for medical assistance. As the appellee was being loaded into the ambulance, his friend, Jeff Crook, asked if he could take control of the wrecked motorcycle. The appellee agreed and requested that Mr. Crook also take possession of the gold chains that the appellee had around his neck.

Officer Evans testified that he and the other officers agreed to let Mr. Crook remove the motorcycle from the scene. However, before releasing the bike, Officer Evans inventoried the contents of a backpack and jacket that were located on it.[3] The officer found a loaded .38 caliber handgun located inside the backpack and found a pill bottle inside the upper left pocket of the jacket.[4] An examination of the pill bottle revealed several small packets of a white powder, which later tested positive for cocaine.

The appellant was taken directly to Sumner Regional Medical Center from the scene of the accident. He spent several hours there receiving medical x-rays and treatment. The record reflects that during that time, Officer Evans obtained an arrest warrant for the appellee based upon the evidence of the cocaine and firearm possession. The appellee was released from the medical center that same evening and was taken to the Drug Task Force Center in Sumner County. The record is silent as to what transpired at the Drug Task Force Center. However, the evidence shows that on the following day, the

---

**2.** There was some evidence that Officer Moniz also planned to charge the appellee with D.U.I. Apparently while at the hospital, the appellee submitted to a blood-alcohol test. The results showed that his blood/alcohol level was less than 0.10 percent.

**3.** Officer Evans testified that he searched the contents of the motorcycle based upon a policy of the Gallatin Police Department which required

an inventory search before releasing personal property to third parties. The motorcycle was approximately twenty feet from the roadside when the search was conducted. The record is unclear whether the appellee was still at the scene at that time.

**4.** The Gallatin police impounded appellee's motorcycle upon finding the cocaine substance.

appellee was transported back to Sumner Regional Medical Center after hospital officials notified police that the appellee had a broken neck.

The appellee stayed at Sumner Regional Medical Center for approximately four days. The record reflects that Officer Moniz obtained an arrest warrant for the appellee on October 24, 1995, based upon the charges of evading arrest and reckless endangerment. Officer Moniz testified that the appellee was arrested after his release from the medical center, and was charged with: (1) possession of a controlled substance, to wit: cocaine over 0.5 grams, with intent to sell; (2) possession of a handgun during the commission of a felony; (3) reckless endangerment; and (4) evading arrest.

The appellee filed a motion to suppress the cocaine substance and the handgun on the ground that they were obtained through an improper search and seizure. Following an evidentiary hearing, the trial court granted the motion to suppress finding that the search was without probable cause and did not fall within an exception to the warrant requirement. The trial court determined that there were no grounds for an inventory search since a third party, Jeff Crook, was available to remove the motorcycle from the scene. In addition, the court found that the search was not incident to a lawful arrest because the appellee was not under arrest when the search was conducted.

On interlocutory appeal, the intermediate appellate court affirmed the suppression order. The State of Tennessee appeals to this Court contending that the search was proper as incident to a lawful arrest. The State concedes that the police officers were not entitled to conduct an inventory search. *See* *Drinkard v. State,* 584 S.W.2d 650, 653–54 (Tenn.1979). Our inquiry, therefore, is whether the appellee was under arrest when the police officers conducted the search.

### STANDARD OF REVIEW

This case involves a review of the trial court's findings of fact and law in granting the motion to suppress. In *State v. Odom,* 928 S.W.2d 18, 22–23 (Tenn.1996), this Court clarified the standard to be used by appellate courts when reviewing those findings:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing, including all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

*Id.* at 23. The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews *de novo.* *State v. Yeargan,* 958 S.W.2d 626, 629 (Tenn.1997); *Odom,* 928 S.W.2d at 23. We apply these standards to address the issue in this case. Contrary to the position taken by the dissent, we consider the issue of whether an arrest was made for Fourth Amendment purposes to be one primarily of fact. *See* *Childs v. State,* 584 S.W.2d 783, 786–87 (Tenn.1979) (reviewing whether an accused was in custody for purposes of giving the *Miranda* warnings as primarily a question of fact).

### DISCUSSION

The fundamental principle of search and seizure jurisprudence is that the police may not conduct a search unless they first show probable cause and obtain a warrant from a neutral magistrate.[5] Under both the federal and state constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression, unless the

---

5. The right to be free from unreasonable searches and seizures is provided in the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution. The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Bridges,* 963 S.W.2d 487, 490 (Tenn.1997).

■ One exception to the warrant requirement is a contemporaneous police search that follows a lawful arrest. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *State v. Watkins,* 827 S.W.2d 293, 295 (Tenn.1992). When police officers make a lawful custodial arrest, they are permitted, as incident to the arrest, to search the person arrested and the immediately surrounding area. *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040. The rationale for those searches is the need to disarm the arrestee in order to · safely take him into custody, and the need to preserve evidence for later use at trial. *United States v. Robinson,* 414 U.S. 218, 234, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973).

■ In cases where the arrestee is an occupant of a vehicle, police officers may conduct searches, contemporaneous to the arrest, of the passenger compartments inside the vehicle. *New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981). Following *Belton,* this Court has joined several jurisdictions [6] in upholding the validity of those searches even where the arrestee is neutralized in the back seat of a police car when ·the search is conducted. *Watkins,* 827 S.W.2d at 295–96.

The State contends that the appellee was under arrest at the accident scene and that the search was proper under *Belton* and *Watkins.* We need not address whether the search fell within the scope of *Belton* and *Watkins* because we affirm the trial court's conclusion that the appellee was not under arrest when the search was conducted.

"The standards for reviewing police conduct become more stringent as the degree of invasion of the citizen's privacy increases."

*State v. Hawkins,* 969 S.W.2d 936, 938 (Tenn. Crim.App.1997). There are three tiers of law enforcement action involving "seizures" of the person under the Fourth Amendment. These situations include a wide range of invasive actions, ranging from the "stop and frisk" under reasonable suspicion, to the "custodial arrest" based on probable cause, to incarceration of an offender following a custodial arrest.

■ Not all lawful seizures justify the same degree of search. For instance, a police officer who has no reasonable suspicion that criminal activity has taken place may still make a casual, investigatory stop; but the officer's law enforcement authority under such circumstances is limited to informal questioning of the persons involved. *Florida v. Bostick,* 501 U.S. 429, 433, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); *State v. Butler,* 795 S.W.2d 680, 685 (Tenn.Crim.App. 1990). Where, on the other hand, the officer has a reasonable, articulable suspicion that a person has engaged in, or is preparing to engage in, criminal behavior, the level of permissible law enforcement authority is raised to the stop and frisk of the person under the principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In such cases, a limited pat-down search of the person and a limited search of the passenger compartment of the vehicle in which the person was riding are permissible upon a showing that such action is justified to protect the officer. *Id.,* 392 U.S. at 27, 88 S.Ct. at 1883; *State v. Simpson,* 968 S.W.2d 776, 780 (Tenn.1998).

■ By comparison, the next level of law enforcement authority, the custodial arrest, is justified upon a showing of probable cause to believe that a crime has been committed, and that the suspect of the investigation committed that crime. As discussed above, a lawful custodial arrest carries with it the power to perform a search "incident to

**6.** *See United States v. Sholola,* 124 F.3d 803, 817 (7th Cir.1997); *United States v. Franco,* 981 F.2d 470, 472 (10th Cir.1992); *United States v. White,* 871 F.2d 41, 44 (6th Cir.1989), *affirmed after remand* 892 F.2d 1044 (6th Cir.1989); *United States v. Karlin,* 852 F.2d 968, 971–72 (7th Cir. 1988); *State v. Pittman,* 5 Neb.App. 152, 556 N.W.2d 276, 282–83 (1996); *State v. Haught,* 122 Idaho 104, 831 P.2d 946, 948 (1992); *State v. Garcia,* 801 S.W.2d 137, 141–42 (Tex.App.1990). *But see United States v. Vasey,* 834 F.2d 782, 787 (9th Cir.1987); *State v. Greenwald,* 109 Nev. 808, 858 P.2d 36, 37 (1993).

arrest," which is a contemporaneous search of both the person arrested, and the area into which the arrestee might reach for a weapon or destroy evidence, including the passenger area of any vehicle in which the arrestee was riding. *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040; *Belton*, 453 U.S. at 457, 101 S.Ct. at 2862.

■■■ The most invasive law enforcement seizure is incarceration. Law enforcement authority in such cases extends to performing a detailed "inventory search" of all personal effects in the arrestee's possession, and possibly of the vehicle in which he was riding at the time of arrest, if that vehicle is also seized. *Illinois v. Lafayette*, 462 U.S. 640, 648, 103 S.Ct. 2605, 2611, 77 L.Ed.2d 65 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976).[7]

■■■ The bottom line is this: when the police conduct a full search under *Chimel*, the seizure of the suspect must rise to the level of a custodial arrest.[8] The only possible exception to this rule might be a limited search in cases where there is probable cause to believe that a crime has been committed,

probable cause to believe that evidence of *the crime in question* will be found, and the necessity for an immediate, warrantless search to prevent the destruction or loss of evidence.[9] In this case, however, the search of the appellee's motorcycle was wholly unrelated to the crime for which police had probable cause to arrest. In order to justify a full *Chimel* search incident to arrest, the critical question remains whether the appellee was, in fact, arrested at the scene.

■■■ In Tennessee, an arrest is more specifically defined as "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." *West v. State*, 221 Tenn. 178, 184, 425 S.W.2d 602, 605 (1968) (citations omitted); *Robertson v. State*, 184 Tenn. 277, 284, 198 S.W.2d 633, 635–36 (1947) (citations omitted); *State v. Williams*, 914 S.W.2d 940, 947 (Tenn.Crim.App.1995).[10] An arrest may be affected without formal words or a station house booking. 5 Am.Jur.2d *Arrest* § 2 (1995). However, there must be actual re-

7. An inventory search of a vehicle will be upheld, however, only when there is no reasonable alternative to seizure of the vehicle. *Drinkard v. State*, 584 S.W.2d 650, 653 (1979).

8. The dissent seems to infer that because Officer Moniz had probable cause to arrest the appellee for evading arrest and reckless driving, the appellee was necessarily "arrestable;" and therefore, whether or not an arrest had actually been effectuated, a search incident to arrest was justified. We decline to hold that a search may be upheld as a search incident to arrest merely because a lawful custodial arrest "could have" been made. *State v. Moore*, 949 S.W.2d 704, 706 (Tenn.Crim.App.1997), *no app. filed*, which appears to hold to the contrary, is hereby overruled. *Accord, Layland v. State*, 535 P.2d 1043 (Alaska 1975), *overruled on other grounds; State v. Greenwald*, 109 Nev. 808, 858 P.2d 36 (1993); *People v. Evans*, 43 N.Y.2d 160, 371 N.E.2d 528, 400 N.Y.S.2d 810 (N.Y.1977).

9. *See e.g., Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973)(warrantless search of evidence beneath suspect's fingernails reasonable in strangulation murder case even in the absence of a contemporaneous arrest, because of "evanescent nature" of such evidence); *United States v. Chapel*, 55 F.3d 1416, 1419 (9th Cir.1995)(warrantless seizure of DUI suspect's blood reasonable even without contemporaneous arrest because the accuracy of blood-alcohol evidence diminishes quickly over time); *United States v. Berry*, 866 F.2d 887, 891 (6th Cir. 1989)(same factual scenario and rationale as in *Chapel*). For an excellent discussion of the narrow *Cupp* exception see 3 Wayne R. LaFave, *Search and Seizure* § 5.4(b) at 155–163 (1996 ed.).

10. The dissent opines that the definition of "arrest" adopted in *Robertson* and reaffirmed in *West* is no longer accurate. Cited are a series of United States Supreme Court cases and Tennessee cases that the dissent claims establish a new definition of arrest, to wit: "an arrest occurs if, in view of all the circumstances surrounding the incident, a reasonable person would have understood that he or she was not free to leave." This definition, however, fails to recognize the distinction between "seizure" and "arrest," discussed above. A person may be seized without being placed under custodial arrest. None of the cases cited by the dissent deal with this precise issue. While we agree that the "reasonable person" standard is a factor in determining whether an arrest has occurred, just as it would be for any seizure, we believe more is required to establish a custodial arrest for purposes of a search incident to an arrest.

straint on the arrestee's freedom of movement under legal authority of the arresting officer. *Id.*

Relying on that definition, we acknowledge that the facts in this case are close as to whether the appellee was under arrest at the accident scene. The trial court found that Officer Moniz apprehended the appellee and intended to place him under arrest following the wreck. The officer testified, however, that he did not arrest the appellee due to the appellee's injuries. Although Officer Moniz had probable cause to make an arrest at the scene, neither he nor Officer Evans discussed criminal charges or arrest procedures with the appellee. The appellee questioned the officers and was told only that he would be taken to a nearby hospital for medical treatment. The officers did not take the appellee into custody until several hours later when he was first released from the medical center.

Giving deference to the trial court's findings of fact, we agree with the trial court's ultimate conclusion that the appellee was not under arrest at the time of the search. The evidence reflects that the appellee was kept at the accident scene for only a few minutes while waiting on the arrival of an ambulance. Without more, there is no showing that the appellee was being detained by police for any reason other than medical treatment.

If law enforcement officers intend to justify a search as incident to an arrest, it is incumbent upon them to take some action that would indicate to a reasonable person that he or she is under arrest.[11] Although

formal words of arrest are not required, *see* 5 Am.Jur.2d *Arrest* § 2 (1995), some words or actions should be used that make it clear to the arrestee that he or she is under the control and legal authority of the arresting officer, and not free to leave. In this case, actions that would have accomplished this included, but were not limited to, accompanying the appellee to the hospital until the arrest warrant could be obtained and served, telling the appellee that he should consider himself in custody pending actual service of the arrest warrant, or any other words or actions that would have conveyed the same message.

## CONCLUSION

It is axiomatic that a warrantless police search may not precede an arrest and serve as part of its justification. *Smith v. Ohio*, 494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464 (1990) (per curiam); *Sibron v. New York*, 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). Moreover, we are not prepared to hold that the police may conduct a warrantless search merely because they have probable cause to arrest the suspect. Having determined that the appellee was not under arrest at the time of the search, we conclude that the search was not incident to a lawful arrest.[12]

The judgment of the Court of Criminal Appeals is affirmed with costs taxed to the State of Tennessee.

ANDERSON, C.J., BIRCH, J., concur.

DROWOTA, HOLDER, JJ., dissent.

---

11. The State originally tried to justify the search of the motorcycle and its contents as an inventory search. It was only after it became apparent that this argument would fail under the principles of *Drinkard v. State*, 584 S.W.2d at 653–54, (because of the offer by appellee's friend Jeff Crook to take control of the motorcycle) that the State tried to justify this search as "incident to arrest." It is clear that Officer Moniz did not believe he had arrested the appellee.

12. The "search incident to arrest" exception from *Chimel* is based upon the need to protect police officers and to preserve evidence at the time of arrest. The dissent relies on the Supreme Court's later decision in *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65

L.Ed.2d 633 (1980), to argue that a search may be upheld under *Chimel* where it occurs before the arrest. We do not read *Rawlings* to broaden the scope of searches incident to lawful arrests. In *Rawlings*, the police arrested the suspect immediately after, and contemporaneous to, the search of his person. The Supreme Court upheld the search as incident to arrest based upon the circumstances in that case. 448 U.S. at 111, 100 S.Ct. at 2564. In appellee's case, the police did not take custody of the appellee until several hours after the search, when the appellee was first released from the medical center. Moreover, the formal arrest was not made until approximately four days later. The search exceeded the scope and rationale of *Chimel*.

FRANK F. DROWOTA, III, Justice, dissenting.

I respectfully dissent from the majority's decision in this case. In my view, the appellee had been arrested at the time his motorcycle was searched; therefore, the search was valid as incident to a lawful arrest. Even assuming, however, that the appellee had not been technically arrested at the time the search occurred, the search and arrest were substantially contemporaneous; therefore, the search was constitutionally valid as incident to a lawful arrest. Accordingly, I would reverse the judgments of the lower courts which ordered suppression of the evidence seized during the search and remand this cause to the trial court for further proceedings.

## I.

### *SEARCH INCIDENT TO ARREST*

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." Similarly Article 1, Section 7 of the Tennessee Constitution guarantees "that the people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures...." "[A]rticle I, section 7 is identical in intent and purpose with the Fourth Amendment." *State v. Downey,* 945 S.W.2d 102, 106 (Tenn.1997). Therefore, both the federal and the state constitutions protect against unreasonable "searches" and "seizures." As the majority decision recognizes, under both the federal and state constitutions, a warrantless search or seizure is presumed constitutionally unreasonable unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Simpson,* 968 S.W.2d 776, 780 (Tenn.1998).

The State contends that the search in this case was conducted in accordance with one of those narrowly defined exceptions to the warrant requirement—a search incident to a lawful arrest. *Chimel v. California,* 395 U.S.

752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *State v. Watkins,* 827 S.W.2d 293, 295 (Tenn.1992). When police officers make a lawful arrest of the occupant of an automobile, a search of the person arrested and of the passenger compartment of the vehicle is constitutionally permissible. *New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981); *Watkins,* 827 S.W.2d at 295–96. Officers may conduct the search of the passenger compartment of the automobile even though the person arrested has been placed in the back seat of a police car. *Id.*

In this case, the trial court and Court of Criminal Appeals found that the appellee, Bobby Crutcher, had not been lawfully arrested prior to the search, and as a result the lower courts held the search constitutionally invalid as incident to a lawful arrest. In affirming the decisions of the lower courts, the majority characterizes the lower courts' conclusion that no lawful arrest occurred prior to the search as a *factual finding* and states that the evidence in the record does not preponderate against that finding.

While the majority states the correct standard of appellate review with respect to factual findings, *State v. Odom,* 928 S.W.2d 18, 22–23 (Tenn.1996), the lower court's conclusion that the appellee had not been lawfully arrested at the time of the search is not a finding of fact, it is a conclusion of law, derived from an application of the law to the undisputed facts in this case. This Court is not bound by the conclusions of law of the lower courts and reviews such conclusions *de novo. State v. Yeargan,* 958 S.W.2d 626, 629 (Tenn.1997). Reviewing *de novo* the legal conclusions of the lower courts, it is clear that the trial court and the Court of Criminal Appeals erred in finding the search in this case constitutionally invalid.

In concluding that the appellee had not been lawfully arrested, the majority and the lower courts cite decisions of this Court from 1968 and 1947 for the proposition that an arrest in Tennessee is "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested

to the actual control and will of the person making the arrest." *West v. State,* 221 Tenn. 178, 184, 425 S.W.2d 602, 605 (1968); *Robertson v. State,* 184 Tenn. 277, 284, 198 S.W.2d 633, 635–36 (1947). The undisputed facts in this record demonstrate that Officer Moniz apprehended Crutcher as he was crawling from the roadside brush, seized Crutcher's arm, and began the handcuffing process. These are certainly acts which "indicate an intention to take" the appellee into custody. In addition, Crutcher was lying on the roadside and subjected to the actual control and will of Officer Moniz at the scene of the accident. In my view, therefore, even applying the definition employed by the majority, the appellee had been lawfully arrested at the scene of the accident prior to the search. However, the definition of arrest applied by the majority and the lower courts is no longer the applicable standard.

Under current applicable law, an arrest occurs if, in view of all of the circumstances surrounding the incident, a reasonable person would have understood that he or she was not free to leave. *California v. Hodari D.,* 499 U.S. 621, 627–28, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991); *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988); *INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); *Florida v. Royer,* 460 U.S. 491, 502, 103 S.Ct. 1319, 1326–27, 75 L.Ed.2d 229 (1983) (plurality opinion); *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)(plurality opinion of Stewart, J.); *State v. Moore,* 776 S.W.2d 933, 937 (Tenn.1989); *State v. Bragan,* 920 S.W.2d 227, 242 (Tenn. Crim.App.1995); *State v. Darnell,* 905 S.W.2d 953, 957 (Tenn.Crim.App.1995); *State v. Greene,* 929 S.W.2d 376 (Tenn.Crim.App. 1995); 3 Wayne R. LaFave, *Search and Sei-*

*zure* § 5.1(a) (1996); *cf. State v. Anderson,* 937 S.W.2d 851, 855 (Tenn.1996) (test to determine whether a person is in custody and entitled to *Miranda* [1] warnings prior to interrogation is "whether a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest."). It is an objective test which does not depend upon the subjective intention of the officer nor the subjective perception of the suspect. The subjective intent of the officer is relevant to the assessment only to the extent that the officer's intent has been conveyed to the person confronted. *Chesternut,* 486 U.S. at 575 n. 7, 108 S.Ct. at 1980 n. 7; *Mendenhall,* 446 U.S. at 554 n. 6, 100 S.Ct. at 1877 n. 6 (plurality opinion of Stewart, J.); 3 Wayne R. LaFave, *Search and Seizure* § 5.1(a) (1996); *see also Stansbury v. California,* 511 U.S. 318, 323–25, 114 S.Ct. 1526, 1529–30, 128 L.Ed.2d 293 (1994), citing *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984); *Anderson,* 937 S.W.2d at 854 (uncommunicated belief that person is a suspect is irrelevant to Fifth Amendment custody determination).

Factors courts have considered to determine whether an arrest has occurred include the following: the time, place and purpose of the encounter; the words used by the officer; the officer's tone of voice and general demeanor; the officer's statements to others who were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen. *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877; *People v. Pancoast,* 659 P.2d 1348 (Colo.1982); 3 Wayne R. LaFave, *Search and Seizure* § 5.1(a) (1996).[2]

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** *Compare Anderson,* 937 S.W.2d at 855 (factors relevant to determination of whether a reasonable person would consider himself or herself in custody for Fifth Amendment purposes include the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers pres-

ent; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the officer's suspicions of guilt or evidence of guilt; and the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.)

The majority opinion goes into great detail to distinguish between various Fourth Amendment seizures of the person and refuses to apply the "reasonable person" standard because it "fails to recognize the distinction between 'seizure' and 'arrest.'" I feel the distinction drawn by the majority is immaterial in the context of this appeal. While the scope of search permissible and the term used to describe a seizure vary, depending upon the quantum of individualized suspicion supporting the seizure, the definition of seizure does not vary. For example, if an officer has only a reasonable, articulable suspicion that a person has engaged in, or is about to engage in a crime, the officer may seize the person, but the duration of the seizure, and the scope of the search is limited to an investigatory stop and frisk. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Though the scope of the constitutionally permissible search is limited because the seizure is based only upon reasonable, articulable suspicion, the test to determine whether the person has been seized is the same—in view of all the circumstances surrounding the incident, would a reasonable person have understood that he or she was not free to leave. The standard for determining whether a seizure has occurred remains the same—regardless of whether it is an "arrest," based upon probable cause or an "investigatory stop," based upon reasonable articulable suspicion. It is the individualized suspicion which varies and delineates the scope of the search and the term used to describe the seizure. A lawful arrest, sufficient to support the search incident to arrest exception to the warrant requirement, is simply a Fourth Amendment "seizure" which is based upon probable cause. Therefore, in determining whether a lawful warrantless arrest has occurred, two

questions must be answered: (1) did a seizure of the person occur, i.e., in view of all the circumstances surrounding the incident, would a reasonable person have understood that he or she was not free to leave; and (2) if so, was the seizure based upon probable cause. In this case, the majority recognizes that "Officer Moniz had probable cause to make an arrest at the scene." Therefore, the difference of opinion relates only to the first question—whether a seizure occurred. The distinctions drawn by the majority are irrelevant to that question.

When the correct principle of law is applied to the circumstances of this case, it is clear that the appellee had been lawfully arrested at the time the search of his motorcycle occurred. The incident giving rise to this appeal occurred when Officer Moniz observed three motorcyclists pull away from a traffic light at a high rate of speed. When Officer Moniz activated his siren and lights, two of the motorcyclists pulled over. Crutcher, however, fled from Officer Moniz at speeds in excess of one hundred miles per hour through a residential area just outside the city of Gallatin in Sumner County. Crutcher crashed his motorcycle and was apprehended by Officer Moniz as he was crawling out of the roadside brush. This was not a routine traffic stop which ordinarily does not result in an arrest. Officer Moniz witnessed Crutcher commit criminal offenses, reckless endangerment and evading arrest.[3] Crutcher was already on the ground when Officer Moniz arrived at the accident scene. Officer Moniz proceeded directly to Crutcher, seized Crutcher's arm, and moved it into a position to handcuff Crutcher. Officer Moniz released Crutcher's arm and did not handcuff him only because Crutcher complained of pain and injuries.[4] Though he did

3. The majority's repeated references to issuance and service of an arrest warrant are puzzling. It is beyond dispute that the officer in this case had sufficient grounds to make a warrantless arrest. Officer Moniz witnessed the defendant committing crimes. Tenn.Code Ann. § 40–7–103(a)(1) (1997 Repl.).

4. The trial judge in this case found that the "police officers acted very professionally. They probably saved this Defendant's life by not jerking him off the ground and arresting him, as it

turned out he had a broken neck." Yet, because of the officer's professional conduct, the majority finds that no arrest occurred, concludes the ensuing search is constitutionally infirm, and suppresses the evidence found during the search. The majority's holding fails to recognize that the purpose of the exclusionary rule is to deter official law enforcement wrongdoing, *see State v. Huddleston*, 924 S.W.2d 666, 672 (Tenn.1996), not to punish completely appropriate and highly professional police conduct.

not handcuff Crutcher, Officer Moniz remained with him and was beside Crutcher when Officer Rich Evans arrived on the scene. Both officers stayed with Crutcher until he was taken to the hospital by ambulance. They repeatedly told Crutcher to remain still. Fortunately for Crutcher, the ambulance arrived quickly.[5] Though neither informed Crutcher that he was under arrest, formal words are not a condition precedent to the existence of a lawful arrest.[6] *Chesternut*, 486 U.S. at 574, 108 S.Ct. at 1980. Moreover, "an arrested person is not invariably taken to a police station or confined; if an arrestee is taken to the police station, that is no more than a continuation of the custody inherent in the arrest status." *Illinois v. Lafayette*, 462 U.S. 640, 645, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65 (1983). Finally, the testimony of Officers Moniz and Evans that Crutcher was not arrested at the scene of the accident does not control the determination. "Arrest" is a legal term of art, and a court must apply the law to the facts to determine whether an arrest has occurred. *Watkins*, 827 S.W.2d at 296.

**5.** The majority relies upon the fact that the appellee was kept at the accident scene for only a few minutes as support for its conclusion that no arrest occurred, stating, "[t]he evidence reflects that the appellee was kept at the accident scene for only a few minutes while waiting on the arrival of an ambulance. Without more, there is no showing that the appellee was being detained by police for any reason other than medical treatment." These statements imply that police officers should detain injured suspects in need of medical attention on the side of the highway until all the formalities of a station house arrest are completed. That is certainly not a policy which this Court should encourage either explicitly or implicitly.

**6.** Though the majority repeats the well-settled proposition that formal words are not required to effect an arrest, the majority fails to apply the rule in this case. Given the majority decision, it will be difficult for police to arrest either an intoxicated or unconscious person because it is difficult to inform such a person, either by words or actions, that he or she is being arrested.

**7.** Indeed, "reasonable" is hardly an appropriate descriptive term for a defendant who believes that he is free to leave the scene of an accident which results because the defendant fled from police on a highway which travels through a residential area at speeds in excess of one hundred miles per hour.

For all these reasons, I disagree with the majority and would conclude that Crutcher had been arrested at the time his motorcycle was searched because any reasonable person in Crutcher's position would have understood that he was not free to leave in light of the circumstances.[7] That being the case, I am of the opinion that the warrantless search of Crutcher's motorcycle was valid as a search incident to the lawful warrantless arrest.

## II.

### RAWLINGS V. KENTUCKY

However, even assuming that Crutcher had not been arrested at the time this search occurred, I am of the opinion that the warrantless search was constitutionally valid under the reasoning of *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). In that case, the United States Supreme Court held that a search may precede a formal arrest if the officer has probable cause to arrest at the time of the search and the fruits of the search were not necessary to support probable cause to arrest.[8] *See Warden v. State*, 214 Tenn. 314,

**8.** This principle has been applied in an overwhelming majority of jurisdictions both before and after the United States Supreme Court rendered its decision in *Rawlings*. *See Seay v. State*, 651 So.2d 81, 83 (Ala.Crim.App.1994); *State v. Earl*, 333 Ark. 489, 970 S.W.2d 789, 792 (1998); *State v. Valenzuela*, 121 Ariz. 274, 589 P.2d 1306, 1307 (1979); *People v. Simon*, 45 Cal.2d 645, 290 P.2d 531, 533 (1955); *People v. Sutherland*, 683 P.2d 1192, 1196 (Colo.1984); *State v. Trine*, 236 Conn. 216, 673 A.2d 1098, 1110 (1996); *Hill v. U.S.*, 627 A.2d 975, 978 (D.C.1993); *Collier v. State*, 177 Ga.App. 217, 338 S.E.2d 724, 725 (1985); *State v. Delmondo*, 54 Haw. 552, 512 P.2d 551, 554 n. 2 (1973); *State v. Crabb*, 107 Idaho 298, 688 P.2d 1203, 1209 (1984); *People v. Kolichman*, 218 Ill.App.3d 132, 161 Ill.Dec. 211, 578 N.E.2d 569, 574 (1991); *Santana v. State*, 679 N.E.2d 1355, 1360 (Ind.App.1997); *State v. Peterson*, 515 N.W.2d 23, 25 (Iowa 1994); *Commonwealth v. Brillante*, 399 Mass. 152, 503 N.E.2d 459, 462 n. 5 (1987); *Commonwealth v. Mantinez*, 44 Mass.App.Ct. 513, 692 N.E.2d 92 (1998); *Lee v. State*, 311 Md. 642, 537 A.2d 235, 247 (1988); *State v. Brooks,*, 634 A.2d 1265, 1266 (Me.1993); *People v. Arterberry*, 431 Mich. 381, 429 N.W.2d 574, 575 (1988); *State v. Varnado*, 582 N.W.2d 886, 892 (Minn.1998); *State v. Bauman*, 586 N.W.2d 416, 420 (Minn.App.1998); *Ellis v. State*, 573 So.2d 724, 726 (Miss.1990); *State v. Meadors*, 177 Mont. 100, 580 P.2d 903, 905 (1978); *State v. Brooks*, 337 N.C. 132, 446

307

320, 379 S.W.2d 788, 791 (1964) (search which precedes arrest will be upheld if the two may be regarded as part of one and the same transaction).

In this case, there is no question that Officer Moniz had probable cause to arrest Crutcher at the scene of the accident for reckless endangerment and evading arrest. Moreover, none of the items discovered during the search of Crutcher's motorcycle were necessary or relevant to establish probable cause to arrest for those two offenses. Clearly, therefore, the officers had probable cause to arrest Crutcher at the scene of the accident. Moreover, the record establishes that Crutcher was released that same evening from the hospital to the custody of the Drug Task Force and remained in police custody until the next day when he was returned to the hospital.[9]

Though there is no bright-line rule, I would conclude that the search and arrest in this case were part of one and the same transaction because the delay between the two was caused solely by the defendant's need for medical treatment. Accordingly, even assuming Crutcher was not arrested at the scene, as the majority concludes, I would hold the search valid as incident to a lawful arrest under the reasoning of *Rawlings*.[10]

*CONCLUSION*

Because I am of the opinion that the warrantless search of the defendant's motorcycle was valid as a search incident to a lawful arrest, I respectfully dissent from the majority decision. I would reverse the decisions of the lower courts which ordered suppression of the evidence and remand this cause to the trial court for further proceedings.

I am authorized to state that Justice Holder concurs in this Dissenting Opinion.

HOLDER, J., concur.

S.E.2d 579, 587 (1994); *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344, 354 (1991); *New Hampshire v. DeGrenier*, 128 N.H. 547, 517 A.2d 814, 816 (1986); *State v. Pena*, 108 N.M. 760, 779 P.2d 538, 544 (N.M.1989); *State v. Jones*, 112 Ohio App.3d 206, 678 N.E.2d 285, 291 (1996); *State v. Elk*, 249 Or. 614, 439 P.2d 1011 (1968); *State v. Green*, 67 Or.App. 70, 676 P.2d 938, 940 (1984); *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701, 710 n. 8 (1982); *State v. Moultrie*, 316 S.C. 547, 451 S.E.2d 34, 37 (1994); *State v. Nguyen*, 563 N.W.2d 120, 125 n. 6 (S.D.1997); *Williams v. State*, 726 S.W.2d 99, 101 (Tex.Crim.App.1986); *State v. Spurgeon*, 904 P.2d 220, 227 (Utah App.1995); *Parker v. Commonwealth*, 255 Va. 96, 496 S.E.2d 47, 52 (1998); *State v. McKenna*, 91 Wash.App. 554, 958 P.2d 1017, 1021 (1998); *State v. Swanson*,

164 Wis.2d 437, 475 N.W.2d 148, 154 (1991); *United States v. Bowden*, 121 F.3d 710 (6th Cir. 1997); *United States v. Miller*, 925 F.2d 695 (4th Cir.1991).

9. The record reflects that on the evening of the accident Crutcher's x-rays were misread. The error was discovered the next day, and the hospital called police and asked that Crutcher be returned to the hospital for treatment of a fractured vertebrae.

10. I disagree with the majority's decision to overrule *State v. Moore*, 949 S.W.2d 704, 706 (Tenn.Crim.App.1997), a decision in which the intermediate appellate court upheld a search under circumstances similar to those present in this case.