IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 23, 2002

## STATE OF TENNESSEE v. FRANKIE DONALD RELEFORD

**Direct Appeal from the Criminal Court of Sullivan County**
**No. S43,896     R. Jerry Beck, Judge**

---

**No. E2001-01736-CCA-R3-CD**
**January 7, 2003**

---

The defendant, Frankie Donald Releford, brings this direct appeal of his convictions for possession of cocaine with intent to sell or deliver, possession of marijuana, possession of drug paraphernalia, to wit, rolling papers, and destruction of evidence. The trial court sentenced the defendant to serve an aggregate eleven-year sentence.[1] In this appeal, the defendant alleges (1) that the trial court erroneously denied his motion to suppress drugs and drug paraphernalia seized in a search incident to his arrest, (2) that the trial court erroneously allowed a witness to testify regarding the results of two spectrophotometer tests without sufficiently establishing the reliability of those instruments, (3) that the evidence is insufficient to support his convictions, (4) that the trial court erred by refusing to grant his motion for new trial on the basis of newly discovered evidence, and (5) that the trial court improperly sentenced him. After reviewing the record and applicable case law, we find that none of the defendant's allegations merit relief and therefore affirm the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Julie A. Rice, Knoxville, Tennessee, for the appellant, Frankie Donald Releford.

Paul G. Summers, Attorney General & Reporter; Braden H. Boucek, Assistant Attorney General; Greeley Welles, District Attorney General; and Joseph Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] The defendant's eleven-year aggregate sentence is comprised of an eleven-year sentence for his possession of cocaine with intent to sell or deliver conviction and several sentences that are to run concurrently to that sentence: eleven months and twenty-nine days for his possession of marijuana conviction, eleven months and twenty-nine days for his possession of drug paraphernalia conviction, and ten years for his destruction of evidence conviction.

**OPINION**

## Factual Background

On February 9, 2000, Officer Steve Hammonds responded to a report that a burglar alarm had been triggered at the Elks Club in Kingsport, Tennessee. When investigating the perimeter of the building, Officer Hammonds noticed a vehicle that he knew belonged to the defendant in the parking lot. When he noticed the brake lights briefly illuminate, he decided to investigate the vehicle. The driver's side window was partially rolled down, and smoke smelling of burnt marijuana was emanating from the window. Officer Hammonds shined his flashlight into the passenger compartment through the window and observed that the defendant was holding a lit marijuana cigarette in his cupped hand. When Officer Hammonds asked the defendant for the cigarette, the defendant responded by putting the cigarette in his mouth and swallowing it. Officer Hammonds subsequently arrested the defendant and searched his person incident to the arrest. During the search, Officer Hammonds recovered $129 in cash and a plastic bag containing four smaller plastic baggies of a substance resembling powder cocaine, as well as one crack cocaine rock. Officer Hammonds then searched the defendant's vehicle and recovered $60 in cash and a pack of rolling papers. After the defendant's vehicle was later impounded, Officer David Quillen performed an inventory search and recovered two knives, one of the knives was found to have trace amount of cocaine on its blade, from the vehicle. Officer Quillen testified that the defendant could have used these knives for sorting cocaine into smaller individual bags.

The substances found in the defendant's vehicle were later identified as cocaine through chemical analysis. Celeste White, a chemist employed by the Tennessee Bureau of Investigation, testified that she administered tests on the substances with both an ultraviolet spectrophotometer and an infrared spectrophotometer. Ms. White explained to the court the scientific principles upon which the instruments operate and testified regarding the reliability and widespread use of these methods of chemical analysis.

After hearing this proof, the jury convicted the defendant as charged. As outlined above, the defendant now brings this appeal challenging his convictions and sentence. We find that none of the defendant's claims entitle him to relief and accordingly affirm the trial court's judgment and sentence.

## Propriety of the Search and Seizure

The defendant complains that the trial court erroneously denied his motion to suppress the fruits of the search incident to his arrest and the impoundment and inventory of his vehicle. While the defendant recognizes that Tennessee law does not currently support his position, he argues that the law should be modified to better protect his privacy interests in his vehicle and accordingly prohibit searches of a vehicle where the individuals occupying the vehicle have been removed from it. Furthermore, he also argues that the state did not prove that it had a need to tow his vehicle and, therefore, the fruits of the resulting inventory of his vehicle, namely the two knives which both had

cocaine residue on their blades, should have been suppressed. We will address each of these arguments in turn.

## Standard of Review for Denial of Motion to Suppress

The defendant challenges the trial court's denial of his motion to suppress on several grounds. We note that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn.1996)). However, the application of the law to these fact-findings is a question of law that this court reviews de novo. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997); Odom, 928 S.W.2d at 23.

## Propriety of the Search Incident To the Defendant's Arrest

We first address the defendant's challenge to the search incident to his arrest. Once an arrestee is properly placed under custodial arrest, the police may conduct a search incident to arrest, which permits the police to search the arrestee's person and the immediately surrounding area.[2] Crutcher, 989 S.W.2d 295. If the arrestee is the occupant of a vehicle, the scope of the search incident to arrest expands to the entire passenger compartment of the vehicle and to any containers found therein. New York v. Belton, 453 U.S. 454, 457, 101 S. Ct. 2860, 2862, 69 L. Ed. 2d 768 (1981); Crutcher, 989 S.W.2d 295. Moreover, an officer may search the passenger compartment in which the arrestee was a passenger "even where the arrestee is neutralized in the back seat of a police car when the search is conducted." Crutcher, 989 S.W.2d at 300 (citing State v. Watkins, 827 S.W.2d 293, 295-96 (Tenn. 1992)). Therefore, Officer Hammonds did not exceed the scope of a permissible search incident to arrest when he searched the defendant's person and then placed the defendant in the police car and searched the passenger compartment of the defendant's vehicle. We decline the defendant's request to modify current federal and Tennessee law and accordingly uphold the validity of the search incident to arrest and find that the trial court properly admitted the fruits of that search as evidence at trial.

## Seizure of the Defendant's Vehicle

Next, the defendant contends that the impoundment of his vehicle and subsequent search were unlawful because the state did not prove that the impoundment was necessary. The defendant cites Drinkard v. State, 584 S.W.2d 650 (Tenn. 1979), for the proposition that his privacy rights in his vehicle outweighed the state's need to impound and inventory his vehicle. Drinkard cautions that "[j]ust cause to arrest the driver is not, alone, enough; there must also be reasonable cause to take his vehicle into custody." Id. at 653. We find that the state did demonstrate that it had reasonable cause to impound and inventory the defendant's vehicle. Because the search of the passenger

---

[2] The defendant does not challenge the legality of his custodial arrest. We note that the defendant's arrest was valid, both pursuant to an outstanding arrest warrant and pursuant to the probable cause formed from the officer's observation of the defendant using an illegal narcotic.

compartment revealed contraband, namely drug paraphernalia in the form of rolling papers, the police had probable cause to search the entire vehicle. The police may conduct such a search of a vehicle based on probable cause either immediately or pursuant to an inventory search after the vehicle has been impounded. See, e.g., State v. Jerry Lane Rubert, No. M2000-00914-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 853, at *14 (Tenn. Crim. App. at Nashville, Jan. 17, 2001). The police could have searched the entire vehicle based on probable cause and the exigencies involved when a vehicle is believed to contain evidence of a crime. Therefore, in the instant case, the police could also legally inventory the defendant's vehicle after they impounded it. Accordingly, we find that the state's interest to impound and search the defendant's vehicle outweighed the defendant's privacy interest in his vehicle, and thus the police actions were reasonable. This issue lacks merit.

### Propriety of Testimony Regarding Spectrophotometer Test Results

The defendant argues that the trial court erred by allowing Ms. White, a chemist employed by the TBI, to testify regarding the results of the infrared spectrophotometer and ultraviolet spectrophotometer tests that she conducted on the substances found both in the defendant's possession and in his vehicle. The spectrophotometer tests confirmed that these substances were cocaine. The defendant asserts that Ms. White should not have been allowed to simply state that she believed that the spectrophotometers were reliable; rather, the trial court should have required some additional proof of their reliability before allowing Ms. White to testify regarding the results of the tests.

In McDaniel v. CSX Transportation, Inc., 955 S.W.2d 257 (Tenn. 1997), our supreme court addressed the admissibility of scientific evidence under Tennessee Rules of Evidence 702 and 703. Citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), the court held that evidence and expert testimony regarding scientific theory must be both relevant and reliable before it can be admitted. McDaniel, 955 S.W.2d at 265. The court also listed several nonexclusive factors that trial courts may consider when determining the reliability of scientific expert testimony, including:

> (1) whether the scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

Id.

Determinations regarding the admissibility of expert testimony are left to the sound discretion of the trial court. State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993). On appeal, our standard of review is whether the trial court abused its discretion by allowing the expert testimony. Before reversing the trial court's determination, we must determine that the record shows that the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that

-4-

caused an injustice to the party complaining." <u>State v. Shirley</u>, 6 S.W.3d 243, 247 (Tenn. 1999); <u>State v. Shuck</u>, 953 S.W.2d 662, 669 (Tenn. 1997).

In the instant case, before testifying about the spectrophotometer test results, Ms. White explained, in depth, the scientific principle underlying the spectrophotometers. She further affirmed that the instruments were commonly used by the TBI, that she had used these particular instruments for three and a half to four years, and that, in her expert opinion, the instruments were reliable. We find that the trial court did not abuse its discretion by failing to require further proof of the error rates and reliability of these instruments. The trial court applied the correct legal standard when evaluating the scientific evidence, that the proponent of the evidence must demonstrate its reliability, <u>see</u> <u>McDaniel</u>, 955 S.W.2d at 265, and the court's subsequent decision was not "against logic or reasoning," as it was within the court's discretion to accept the expert's opinion as to the reliability of the instruments in question. Thus, this issue lacks merit.

## Sufficiency

The defendant asserts that the evidence introduced at trial is insufficient to support his conviction for possession of cocaine with intent to sell or deliver. The defendant argues that the state did not introduce sufficient evidence to prove that the defendant intended to sell, as opposed to use for his personal consumption, the cocaine found on his person. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" state's witnesses and resolves all conflicts in the testimony in favor of the state. <u>State v. Cazes</u>, 875 S.W.2d 253, 259 (Tenn. 1994); <u>State v. Harris</u>, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. <u>Id.</u> The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. <u>See</u> Tenn. R. App. P. 13(e); <u>Harris</u>, 839 S.W.2d at 75. In making this decision, we are to accord the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." <u>See</u> <u>Tuggle</u>, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. <u>State v. Tilson</u>, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." <u>Matthews</u>, 805 S.W.2d at 779.

In the instant case, the jury convicted the defendant of possession of 0.5 grams or more of cocaine with intent to sell or deliver. At trial, the state introduced evidence that Officer Hammonds discovered a plastic bag containing four smaller bags of powder cocaine, totaling 1.1 grams, as well as a crack cocaine rock of 0.6 grams on the defendant's person. An inventory search of the defendant's vehicle revealed two knives with cocaine residue on one of their blades. The state asserts that the defendant used these knives to sort cocaine into individual packets for resale, whereas

the defendant asserts that the defendant used these knives to sort cocaine into smaller quantities for his own personal consumption. Moreover, the defendant also points to the absence of other drug-sorting paraphernalia on the defendant's person and in his vehicle and to the fact that the defendant had relatively small, as opposed to large, sums of cash on his person and in his vehicle, all of which is uncharacteristic for a drug dealer. The defendant asserts that the evidence introduced at trial "equally supports" an inference that the defendant was a cocaine user who bought in bulk for his personal supply, as well as the inference that the defendant intended to sell his supply of cocaine. However, we note that the defendant made these same arguments at trial and that the jury rejected his arguments, instead finding him guilty as charged and thus accrediting the testimony of the state's witnesses. See Cazes, 875 S.W.2d at 259; Harris, 839 S.W.2d at 75. Viewing this evidence in the light most favorable to the state, we find that a rational trier of fact could have found the defendant guilty of possession of cocaine with intent to sell. Thus, this issue lacks merit.


### Newly Discovered Evidence

The defendant argues that the trial court erred by refusing to grant his motion for new trial on the basis of newly discovered evidence, namely that the defendant had discovered the previously unknown true name and whereabouts of a material witness for the defense. To receive a new trial on the ground of newly discovered evidence, a defendant must demonstrate "(1) reasonable diligence in seeking the newly discovered evidence; (2) materiality of the evidence"; and (3) the likelihood that the evidence would change the outcome of the trial. State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994) (citing State v. Goswick, 656 S.W.2d 355, 358-60 (Tenn. 1983)). Additionally, the decision regarding whether to grant or deny a motion for a new trial predicated on newly discovered evidence "rests in the sound discretion of the trial court." State v. Walker, 910 S.W.2d 381, 395 (Tenn. 1995). Moreover, the trial court is authorized to ascertain the credibility of newly discovered evidence for which the new trial is desired, and the motion should be denied unless the court has assured itself that the testimony would be worthy of belief by the jury. Id. (quoting Rosenthal v. State, 292 S.W.2d 1, 5 (Tenn. 1956)). As a general rule, "newly discovered impeachment evidence will not constitute grounds for a new trial . . . . But if the impeaching evidence is so crucial to the defendant's guilt or innocence that its admission will probably result in an acquittal, a new trial may be ordered." State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993) (citing Rosenthal, 292 S.W.2d at 4-5; State v. Rogers, 703 S.W.2d 166, 169 (Tenn. Crim. App. 1985); Evans v. State, 557 S.W.2d 927, 938 (Tenn. Crim. App. 1977)).

In the instant case, the defendant sought a new trial on the basis that, despite his diligent efforts to locate a material witness for the defense, he had only been able to ascertain the witness's true name and location after the trial had concluded. The defendant presented this previously unlocated witness during the new trial hearing. The witness, whom the defendant had not been able to subpoena previously because the witness was fleeing the police, testified that he spoke with the defendant a few minutes before the police arrived and that the defendant was not smoking marijuana and claimed that he did not have any marijuana in his possession at that time.

When denying the defendant's motion for new trial on the basis of the newly discovered name and location of this witness, the trial court found that the defense counsel used diligence in

trying to locate this witness, but that it is doubtful whether the defendant himself used diligence in aiding his attorney. The trial court also found that the witness's testimony, if introduced at trial and if credible, would have been material in that it would have demonstrated that the witness observed the defendant several minutes before Officer Hammonds arrived and that at the time of their conversation, the defendant did not have a lit marijuana cigarette and claimed not to have any marijuana in his possession. However, the trial court found that the testimony of this newly discovered witness was not credible in light of the witness's criminal record, the fact that he was attempting to obtain illegal drugs from the defendant when the two spoke, and the witness's subsequent evasion from the police. The trial court further found that even if the jury had accepted this witness's testimony as credible, the admission of this testimony would not have changed the outcome of the trial. The court found that the approximately two minutes and forty-five second period of time that elapsed between the defendant's conversation with the witness and Officer Hammond's arrival was a sufficient amount of time for the defendant to have lit a marijuana cigarette. The trial court concluded by noting that it accredited and gave great weight to Officer Hammond's testimony and accordingly denied the defendant's motion on the basis that the evidence would not have changed the jury's verdict.

Again, we note that the decision regarding whether to grant a new trial based on newly discovered evidence is left to the sound discretion of the trial court and that the trial court should deny a motion for new trial on the basis of new evidence unless it first determines that a jury would have believed this new evidence. Walker, 910 S.W.2d at 395. Based on the foregoing reasons, we find that the trial court acted properly and within its discretion by denying the defendant's motion. Therefore, this issue lacks merit.

## Sentencing Challenge

The defendant challenges his sentence for possession of cocaine with intent to sell or deliver as excessive, arguing that the trial court erroneously increased his sentence by affording an enhancement factor too much weight and that the court erroneously refused to reduce his sentence in light of certain mitigating factors. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

Although the defendant stands convicted of four offenses, he only challenges his sentence for possession of cocaine with intent to sell or deliver. This offense constitutes a Class B felony,

Tenn. Code Ann. § 39-17-417(a)(4), and in determining the appropriate sentence for this offense, the trial court begins with the presumption that the defendant should receive the minimum in the range. See Tenn. Code Ann. § 40-35-210(c). If the court finds the presence of any enhancement or mitigating factors, the court should first increase the sentence within the range based upon the enhancement factors and then reduce the sentence as appropriate for any mitigating factors. See Tenn. Code Ann. § 40-35-210(d), (e).   No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

The defendant faces an eight-to twelve-year sentence range for his offense because it is a Class B felony. Tenn. Code Ann. § 40-35-112(a)(2).  The trial court classified the defendant as a Range I standard offender for this offense.  Thus, the trial court began its sentencing determination with the defendant's minimum sentence, eight years.  Furthermore, the trial court found one enhancement factor applicable to the defendant's sentence, namely his history of criminal behavior. The trial court accordingly enhanced the defendant's sentence to twelve years based on this enhancement factor. Next, the trial court determined that one mitigating factor was applicable to the defendant's sentence, namely that the defendant neither threatened nor caused serious bodily injury during the commission of this crime and accordingly reduced the defendant's sentence to eleven years.

The defendant does not contest the applicability of this enhancement factor, but rather complains that the trial court improperly sentenced him by giving too much weight to his enhancement factor and not sufficient weight to his mitigating factor. However, as noted above, the weight applied to each factor is not prescribed by statute and is left to the sound discretion of the court, provided the court's decision is supported by the record and comports with the sentencing principles. See Santiago, 914 S.W.2d at 125.

Turning first to the applied enhancement factor, the defendant's history of criminal behavior, the trial court considered the defendant's several felony and misdemeanor convictions that were not necessary to establish his classification as a Range I offender, including, inter alia, possession with intent to distribute cocaine hydrochloride, felony escape, automobile burglary, two forgery convictions, driving under the influence, assault and battery, and marijuana possession, and accordingly enhanced the defendant's sentence.  We find that the trial court's determination of this factor's applicability and the weight that the court afforded this factor are supported by the record.

Turning next to the applied mitigating factor, the trial court determined that the defendant's behavior did not cause or threaten to cause serious bodily injury and accordingly reduced the defendant's enhanced sentence from 12 years to 11 years.  Although the defendant complains that the trial court erred by giving insufficient weight to this mitigating factor, we find that the trial court acted within its discretion by reducing the defendant's enhanced sentence from 12 to 11 years.  In the State v. Ross, 49 S.W.3d 833 (Tenn. 2001), our supreme court held that application of this mitigating factor should not be excluded per se to cases involving the sale of cocaine, but that the applicability of the factor should be determined on a case-by-case basis. Id. at 849.  The court further held that under the facts of Ross, the factor was "entitled to very little weight in the overall sentencing determination." Id.  Thus, in the instant case, the trial court was not compelled to give

this mitigating factor great weight. Furthermore, we find that the trial court afforded this factor appropriate weight given the facts surrounding the defendant's case.

Finally, the defendant complains that the trial court erred by failing to apply mitigating factor (13), the catch-all mitigating factor that the defendant argues should have been applied to allow consideration of his son's testimony about the positive influence the defendant has had on his son's life. The defendant contends that the court ruled that this mitigating factor was applicable to his sentence, but that the court, however, was "at a loss" concerning how to apply this factor. After stating that the defendant's son's testimony was compelling, the trial court ultimately declined to use the son's testimony to mitigate the defendant's sentence for the instant offense. We will not second guess the trial court's decision to give this factor little or no weight. Based on the above, we find that the defendant's sentencing challenge lacks merit.

### Conclusion

Based on the foregoing analysis, the judgment of conviction is AFFIRMED.

_____
JERRY L. SMITH, JUDGE