# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 19, 2011

## STATE OF TENNESSEE v. DESHAWN WENTZ

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40801102     Michael R. Jones, Judge**

---

**No. M2010-01668-CCA-R3-CD - Filed August 19, 2011**

---

The defendant, Deshawn Wentz, was convicted by a Montgomery County jury of possession of .5 grams or more of cocaine with intent to sell, a Class B felony, and tampering with evidence, a Class C felony, and was sentenced by the trial court to concurrent terms of eleven and seven years, respectively, to be served in the Department of Correction. On appeal, he contends that (1) the trial court erred in denying his motion to suppress and (2) the evidence is insufficient to sustain his convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Michael D. Noel, Brentwood, Tennessee, for the appellant, Deshawn Wentz.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Robert J. Nash and Helen O. Young, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

According to the State's proof at trial, on February 25, 2008, the defendant, who was driving a white Ford Mustang with inoperative taillights, was pulled over by Clarksville police officers. After stopping, the defendant exited the vehicle and fled on foot. Officers eventually apprehended him and found nearly 15 grams of cocaine strewn along his flight path, with most concentrated in a single bag. As a result, the defendant was indicted for

possession with intent to sell .5 grams or more of cocaine within 1000 feet of a school zone, a Class A felony; tampering with evidence, a Class C felony; and evading arrest, a Class A misdemeanor.

On February 10, 2009, the defendant filed a motion to suppress all evidence obtained during or subsequent to the traffic stop, contending that the officers lacked probable cause for the traffic stop and his subsequent arrest. At the October 18, 2009 suppression hearing, Officer Stephen Holman of the Clarksville Police Department testified that he and another officer, David Miller, pulled the defendant over in the late evening for driving with inoperative taillights. He said that he and Officer Miller first noticed the taillight problem while other cars separated their patrol car from the defendant's vehicle and that they followed the defendant "for some distance" before attempting to stop him. He denied, however, that the stop was pretextual, testifying that he did not know the defendant and had no reason to believe that drugs would be involved in the traffic stop.

Officer Holman testified that the defendant pulled over, exited the vehicle, and, despite their orders to get back into the vehicle, kicked off his flip flops and took off running. He said that he chased and caught the defendant and brought him back to his vehicle, where he was placed under arrest and eventually transported to jail by a drug agent. Afterwards, Officer Holman drove the defendant's vehicle, with its headlights on, to "Major Crimes," where he observed that the taillights were still not working.

The defendant testified that the headlights of the 2008 Mustang he was driving on the day of his arrest were working that night and that he had not turned off any of the car's lights but left them in the "auto position." He also claimed that the vehicle's taillights were on as the officer drove it from the scene.

By stipulation of the parties, a statement by automobile electronic systems expert Robert Lancette was read into evidence. Lancette stated that he had examined the wiring diagram for a 2008 Ford Mustang's lighting and determined that the taillights could not be turned off while the headlights remained on.

At the conclusion of the hearing, the trial court, accrediting Officer Holman's testimony that the vehicle's taillights were off, found that the officers had probable cause to stop the defendant. Accordingly, the trial court denied the defendant's motion to suppress the evidence.

At trial, Officer David Miller of the Clarksville Police Department testified that on the night of February 25, 2008, he initiated a traffic stop of a white Mustang that was being driven "with no tail lights." He said that the driver of the Mustang eventually stopped, exited

the vehicle, and fled on foot, despite his having twice ordered him to get back into the car. Officer Miller stated that he and Officer Holman gave chase and eventually apprehended the defendant. Afterwards, he established a "perimeter" around the defendant's flight path "to make sure [the defendant] didn't drop anything, stuff like that."

Officer Holman, in addition to reiterating his suppression hearing testimony, testified that he chased the fleeing defendant over a fence, through a yard, around a house, across a street, through a field, over another fence, and around a corner. He said he briefly lost sight of the defendant as he rounded the final corner but saw him again in the doorway of an apartment. He and another officer then apprehended the defendant. Throughout his flight, the defendant "kept reaching in his pants trying to hold them up" and kept his hands "concentrated on his waist band." In addition, before he jumped the first fence, the defendant threw down "some kind of bag," which Officer Holman later discovered was "[j]ust an empty Wal-Mart bag."

A narcotics investigator assigned to the Major Crimes Unit, David O'Dell, testified that he happened upon the scene of the defendant's stop and radioed his supervisor, Sergeant Bert Clinard. Sergeant Clinard arrived and had several officers line up and walk across a field through which they were told the defendant had fled. Investigator O'Dell crossed the fence that lay at the edge of the field and continued following the defendant's flight path. A short while later, Sergeant Clinard called him over to a driveway located between two houses, where the sergeant had discovered a "clear plastic bag that had been torn" with "white powder" inside it. Investigator O'Dell and another officer then discovered some other "chunks of white powdery material."

Sergeant Clinard testified that when he and four or five other officers searched the area, following what he understood to be "the flight pattern of the individual that ran from the car," he found a bag containing cocaine lying on the ground between two houses. He stated that he later learned that the defendant's flight path did not pass directly through the area where he found the bag, began searching the correct path, and "started finding small chunks of cocaine in the grass." He further testified that, based on his training and experience, cocaine intended for personal use usually does not exceed half a gram.

Katobwa Beyonka Stallworth, principal of Tabernacle Christian School, drew her school's location on a map and testified that it was accredited through the Southern Association of Colleges and Schools.[1]

---

[1] The defendant was indicted for possession of a controlled substance with intent to sell within 1000 feet of the real property that comprises a public or private elementary school. However, the jury convicted
(continued...)

Michael Wayne Caver, another Clarksville Police Department officer, testified that he measured the distance between the location where the drugs were found and the Tabernacle School and found it to be 813 feet.

Tennessee Bureau of Investigation ("TBI") Special Agent Forensic Scientist Oakley McKinney, an expert in fingerprint analysis, testified that he visually examined the plastic bag containing white powder and did not discover any latent prints.

TBI Special Agent Forensic Scientist Ella Carpenter, an expert in drug chemistry who analyzed the substances submitted in the case, testified that the plastic bag contained 14.2 grams of cocaine and that the separate "chunks" collected from the ground consisted of a total of .5 grams of cocaine.

Robert Lancette, the expert in the field of automobile electronic systems whose statement was read into evidence at the suppression hearing, testified that a 2008 Ford Mustang was designed so that, if everything were functioning properly, the headlights would never be on without the taillights. According to his testimony, if one of the taillights on the vehicle stopped working, a warning light on the instrument cluster would be illuminated. He acknowledged, however, that he never examined the particular Mustang that the defendant was driving.

Estrella Miller, a resident of the apartment complex where the defendant was eventually apprehended, testified that she saw people running outside her door and that police shined lights into her apartment.

Vickie Head, another area resident, testified that she also saw people running and that the police searched her sister's apartment but apparently found nothing of interest.

Ruby Lee Dowlen, Ms. Head's sister, testified that she consented to a search of her home but that police officers did not take anything.

The defendant admitted that he had run from the traffic stop after an officer told him to get back in his car. He denied, however, that the drugs were his, testifying that he never threw anything during the chase.

[1](...continued)
him only of possession with intent to sell.

At the conclusion of the proof, the trial court dismissed the evading arrest charge of the indictment. Following deliberations, the jury convicted the defendant of possession with intent to sell .5 grams or more of cocaine, a Class B felony, and tampering with evidence, a Class C felony.

## ANALYSIS

### I. Motion to Suppress

The defendant contends that the trial court erred in denying his motion to suppress, arguing that the evidence preponderates against the trial court's finding that the taillights of the Mustang were not on at the time the officers pulled him over. In support, he cites both his testimony that the taillights were on and the statement of the automotive expert that a 2008 Ford Mustang's taillights are always on whenever the headlights are lit. The State responds that it was within the province of the trial judge, as the trier of fact, to accredit Officer Holman's testimony that the taillights were off at the time he initiated the traffic stop. We agree with the State.

When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. However, the application of the law to the facts found by the trial court is a question of law and is reviewed de novo. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)).

In denying the defendant's motion to suppress, the trial court specifically accredited the testimony of Officer Holman that the vehicle's taillights were not on over that of the defendant, who claimed otherwise. As the State points out, determinations of credibility and the resolution of conflicts in the evidence are matters that are entrusted to the discretion of the trial court as the trier of fact. Notably, the defendant's automotive expert, who stated that a 2008 Ford Mustang's taillights are always on whenever the headlights are lit, based his conclusion on his examination of the wiring diagram for a 2008 Ford Mustang rather than the particular vehicle driven by the defendant. We conclude, therefore, that the trial court properly denied the defendant's motion to suppress the evidence.

## II. Sufficiency of the Evidence

The defendant also contends that the evidence is insufficient to sustain his convictions, arguing that the State failed to prove beyond a reasonable doubt that the drugs were his. The State responds that the defendant's decision to flee and the proximity of the drugs to his path were sufficient for a rational trier of fact to infer that the drugs were his and to find him guilty of both the possession charge and the tampering with evidence charge. We, again, agree with the State.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are to be resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

We conclude that the evidence, viewed in the light most favorable to the State, was sufficient for a rational jury to find the defendant guilty of the offenses beyond a reasonable doubt. To sustain the conviction for possession of .5 grams or more of cocaine with the

intent to deliver or sell, the State had to show beyond a reasonable doubt that the defendant knowingly possessed .5 grams or more of cocaine with the intent to deliver or sell it. Tenn. Code Ann. § 39-17-417(a)(4), (c)(1) (2010). Tennessee Code Annotated section 39-17-419 provides in pertinent part: "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." To sustain the conviction for tampering with evidence, the State had to prove beyond a reasonable doubt that the defendant, "knowing that an investigation or official proceeding [was] pending or in progress," altered, destroyed, or concealed "any record, document or thing with intent to impair its verity, legibility or availability as evidence in the investigation or official proceeding." Tenn. Code Ann. § 39-16-503(a) (2010).

The State presented evidence that the defendant fled from two officers who had pulled him over for an inoperable taillight, despite being twice ordered by the officers to remain in the vehicle. A pursuing officer saw the defendant, during his flight, repeatedly reach in his pants and throw down at least one item, which the officer later discovered to be an empty Wal-Mart bag. That officer, however, lost sight of the defendant during a portion of his flight and other officers who searched the area immediately afterwards found 14.7 grams of cocaine strewn along the defendant's flight path. This was sufficient evidence from which a rational jury could reasonably infer that the drugs found belonged to the defendant. We conclude, therefore, that the evidence is sufficient to sustain the defendant's convictions.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE